FILED

12 NOV 20 PM 4: 28

CIRCUIT COURT
FOR MULTNOMAH COUNTY

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

**CEDAR LAKE HOMEOWNERS ASSOCIATION**, an Oregon domestic nonprofit corporation; and **DECATUR BRIDGEWATER VISTA CONDOMINIUMS OWNERS' ASSOCIATION**, an Oregon domestic nonprofit corporation,

        Plaintiffs,

    v.

**NORTHWEST EMPIRE COMMUNITY MANAGEMENT, INC.**, fka Professional Community Management, Inc., an Oregon corporation,

        Defendant.

Case No. 1211-14420

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PETITION FOR PROVISIONAL PROCESS OR RESTRAINING ORDER**

**HEARING: NOVEMBER 21, 2012; 1:30 pm**



ENTERED

NOV 21 2012

IN REGISTER NM

Plaintiffs are two homeowners association whose community manager, defendant Northwest Empire Community Management, Inc., informed them in June 2012 that their collected assessments had been, in Defendant's words, "inappropriately allocated." Defendant's forensic accountant later informed them that plaintiff Cedar Lake had lost $60,772.52 and Decatur Bridgewater had lost $72,099.18, for a total of $132,871.60.

On November 13th, plaintiffs sued defendant for breach of contract, conversion, unfair trade practices, and breach of fiduciary duty. On November 14th, plaintiffs presented at *ex parte* their Petition for Issuance of Provisional Process – Writ of Attachment, Writ of Garnishment, and Restraining Order and Order to Show Cause. The petition seeks to attach or garnish, or restrain the distribution of, proceeds from insurance claims filed by defendant on account of the "inappropriate allocations." At *ex parte*, Judge Immergut granted a Temporary Restraining Order to enjoin defendant from disbursing insurance proceeds in the amount of $132,871.60, and

Page 1 -  PLAINTIFF'S   MEMORANDUM   FOR   PROVISIONAL   PROCESS   AND PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*689748.14501-002*

1   an Order to Show Cause for call on November 20th for a hearing on November 21st.

2       As shown in the Petition and below, defendant's financial condition is uncertain and

3   defendant's principals may divert insurance proceeds from Northwest Empire.  Plaintiffs do not

4   know whether defendant has received insurance proceeds or, if it has, whether it has deposited

5   them in its bank accounts.  Plaintiffs seek to have insurance proceeds in the amount of

6   $132,871.60 plus the sum of $44,000 for anticipated attorney fees and costs paid into court

7   through attachment if defendant has the funds and/or through garnishment if defendant's bank

8   has the funds.  In the alternative, if provisional process is not available or if defendant has not

9   received the funds from its insurer, plaintiffs seek a continuation of the restraining order under

10  ORCP 83H(2) to prevent defendant from transferring, conveying, paying, or disbursing any of

11  the proceeds or any interest in them.

12  FACTS

13      Many of the facts are set forth in the verified petition.  They will be summarized and

14  supplemented here.

15      Each plaintiff has a contract with defendant for defendant to be its community manager.[1]

16  As part of its obligations, defendant provides financial management services, including the

17  collection of the association's assessments, the deposit of them into custodial bank accounts for

18  operating and reserve funds, disbursements from the accounts for budgeted and other authorized

19  items, and the monthly distribution of financial accounting records.[2]  The management contracts

20  further provide that the prevailing party in any litigation is entitled to an award of attorney fees

21  and costs incurred in the litigation.  The contracts have attorney fees provisions as alleged in the

22  complaint and as set forth in exhibits to the Declarations of Robert S. Watson and Neill Fishman

23  that support the Petition.

24  _____

25      [1] Cedar Lake's contract is Exhibit 1 to the Declaration of Robert S. Watson, and Decatur
Bridgewater's contract is Exhibit 1 to the Declaration of Neill Fishman.

26      [2] See Section 2 in the contracts.

Page 2 -   PLAINTIFF'S   MEMORANDUM   FOR   PROVISIONAL   PROCESS   AND
PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*689748.14501-002*

On June 6, 2012, Defendant's principal, Gregory Lloyd, sent an email to Defendant's clients, stating in part[3]:

> On Monday 06/04/2012 it was discovered that your HOA's funds have been inappropriately allocated. We have held all expenditures on your account at this time while a forensic account reviews your account....

> We will be having a meeting Monday morning at 7:30 AM at the NW Empire office located at 3330 NW Yeon Ave., Suite 200, Portland OR 97210 to discuss this situation with myself, our forensic CPA and fraud attorney.

At the June 11th meeting, Mr. Lloyd said that Defendant had not created separate custodial accounts for Plaintiffs' and other clients' funds. Instead, Defendant had comingled the funds. He said that the funds had been disbursed for purposes other than {laintiffs' budgeted and other authorized expenditures. He also said that it appeared that an employee/co-owner of Defendant had taken a significant amount of client funds. Subsequently, the forensic certified public accountant, John Brams, hired by Defendant transmitted summary accountings that showed that Plaintiffs were missing the funds stated above.[4] The funds have not been restored.

Defendant has both liability insurance and employee dishonesty insurance issued by Sentinel Insurance Company, part of The Hartford.[5] Plaintiffs anticipate presenting a witness at the hearing who will testify about remarks by Mr. Lloyd that Defendant is for practical purposes out-of-business and that he plans on diverting the insurance proceeds received on account of claims made for Northwest Empire to cover losses incurred by a sister company, Porter Braune, which manages rental properties.

Defendant was duly served with a Summons, the Complaint, and the Petition and all supporting documents on November 13, 2012. A true copy of the Order to Show Cause was duly served on Defendant on November 14, 2012. After the case was assigned to Judge Baldwin

---

[3] The email is Exhibit 2 to the Petition and Exhibit 1 to the Declaration of Neill Fishman.

[4] Exhibit 3 to the Petition is the summary page for Cedar Lake, Exhibit 4 is the summary page for Decatur Bridgewater.

[5] Copies of the Declaration pages from the policies are Exhibit 5 to the Petition.

Page 3 - PLAINTIFF'S MEMORANDUM FOR PROVISIONAL PROCESS AND PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*689748.14501-002*

for the Show Cause Hearing, Plaintiffs served this memorandum and a letter setting forth the time and place of the hearing on Defendant.

POINTS AND AUTHORITIES

Plaintiffs do not know whether Defendant has received insurance proceeds, has received them and deposited them into its bank account, or has yet to receive them. Plaintiffs therefore seek an order authorizing a writ of attachment, a writ of garnishment or, in the alternative, a continuation of the restraining order depending on the circumstances found by the court to secure funds to pay a judgment in their favor.

I.    PLAINTIFFS ARE ENTITLED TO PROVISIONAL PROCESS

ORCP 83 and 84 govern the issuance of provisional process. In regard to the ORCP 83, the Petition sets forth the name and place of business of the defendant – ORCP 83A(1); that the underlying claim is not based on a consumer transaction – ORCP 83 A(2); that Plaintiffs do not seek claim and delivery – ORCP 83 A(3)(a); that Plaintiffs do seek a restraining order and the terms of the order – ORCP 83 A(3)(b); that the plaintiffs' claims to provisional process are not based upon ownership, entitlement to possession, a security interest or otherwise -- ORCP 83 A(4); that Plaintiffs do not have a writing or writings that purport to give them a claim to provisional process – ORCP 83 A(5); that the insurance proceeds are not wrongfully detained by Defendant or another person – ORCP 83 A(6); that the insurance proceeds have not been taken by public authority for a tax, assessment, or fine – ORCP 83 A(7); and that Plaintiffs do not claim has waived the right to be heard – ORCP 83A(8).

With regard to a showing that there is a substantial danger that defendant or another person might conceal or remove the property, or transfer it to an innocent purchaser, ORCP 83 A(9), Plaintiffs will present a witness who will testify that Mr. Lloyd has said that he has submitted insurance claims for Northwest Empire and that he will disburse funds on account of the claims for the benefit of its sister company or will otherwise dispose of them so as to make them unavailable to pay a judgment in favor of Plaintiffs. Further, since its disclosure of the

Page 4 -   PLAINTIFF'S   MEMORANDUM   FOR   PROVISIONAL   PROCESS   AND
PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*689748.14501-002*

1   "inappropriate allocations," Northwest Empire has lost all or almost all of its clients, such that if

2   provisional process is not issued, Plaintiffs will suffer immediate and irreparable injury because

3   there will not be assets to satisfy a judgment – ORCP 83 A(10).

4   　　　Finally, Plaintiffs have shown or will show by the verified Petition, the accompanying

5   declarations, exhibits, and the anticipated evidence at the hearing that there is no reasonable

6   probability that Defendant will establish a successful defense to the underlying claims – ORCP

7   83 A(12).   Plaintiffs have sued for breach of contract, conversion, unfair and deceptive trade

8   practices, and breach of fiduciary duty.   Taking only breach of contract and breach of fiduciary

9   duty as examples, there does not appear to be a defense in light of the admissions by Defendant

10  that the custodial funds were "inappropriately allocated" and the amounts of those

11  misappropriations.   The acts that constitute the breaches of contract and fiduciary duty include,

12  but are not necessarily limited to:   the failure to establish and maintain separate custodial

13  accounts for operating and reserve funds; the comingling of funds from all of Defendant's clients

14  in one bank account; the payment by Defendant from the account for the expenses other than the

15  approved budgeted expenses of Plaintiffs or their other authorized expenditures; the

16  embezzlement of funds by Defendant's owner/employee; the failure to maintain accurate

17  accounting records; and the distribution to Plaintiffs of false and deceptive monthly accounting

18  records, including a balance sheet, a statement of income and expense, a schedule of cash

19  investments, reserve allocations, and a check register.

20  　　　In addition, the court is authorized to order issuance of a Writ of Attachment and/or a

21  Writ of Garnishment under ORCP 84 A(2)(a), because this is an action upon an express contract

22  for the direct payment of money by Defendant to or for the benefit of Plaintiffs, and the contract

23  is not secured by a mortgage, lien or pledge.

24  　　　If Defendant's insurer has made payment on Defendant's insurance claims to Defendant,

25  and if Defendant holds those proceeds, Plaintiffs will use a Writ of Attachment to seize them and

26  put them into court.   If Defendant has deposited the proceeds into its bank, Plaintiffs will cause a

Page 5 -   PLAINTIFF'S   MEMORANDUM   FOR   PROVISIONAL   PROCESS   AND
　　　　　PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*689748.14501-002*

1    writ of garnishment to be served on the bank, and the funds paid into court.  If Defendant's

2    insurer has not yet made payment, Plaintiffs will cause a writ of garnishment to be served on the

3    insurer.

4            Finally, if the court does not grant an order for provisional process, Plaintiffs ask that the

5    court continue the restraining order under the provisions of ORCP 83 H(2):

6            Subject to section B of this rule, if the court on hearing on a show cause order
             issued under section F of this rule finds that there is probable cause for sustaining
7            the validity of the underlying claim but that the provisional process sought cannot
             properly be ordered, and if Rule 82 A has been complied with, the court in its
8            discretion may continue or issue a restraining order of the nature described in
             section E of this rule.  If a restraining order is issued, it shall conform to the
9            requirements of Rule 79 D.  A restraining order under this subsection does not
             create a lien.

10

11   II.     SECURITY FOR PROVISIONAL PROCESS

12           ORCP 82 A(3)(a) requires that, before any property is attached or garnished under Rule

13   84, a plaintiff must "file with the clerk a surety bond or an irrevocable letter of credit issued by

14   an insured institution in an amount fixed by the court, and to the effect that plaintiff will pay all

15   costs that may be adjudged to defendant, and all damages which the defendant may sustain by

16   reason of the attachment or taking, if the same be wrongful or without sufficient cause, not

17   exceeding the sum specified in the bond or letter of credit."  ORCP 84 A(4) likewise provides

18   that no other provisional process (*e.g.*, a restraining order) shall issue except upon the giving of

19   security.

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

Page 6 -   PLAINTIFF'S    MEMORANDUM    FOR    PROVISIONAL    PROCESS    AND
           PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224-4133 (facsimile)

689748.14501-002

1   Judge Immergut ordered, and Plaintiffs posted, a $500 cash bond for the issuance of the

2   restraining order on November 14, 2012.  Plaintiffs respectfully request that the court order that

3   said cash bond shall continue as the security for the provisional process granted.

4         DATED this 21st day of November, 2012.

5                              LANDYE BENNETT BLUMSTEIN LLP

6

7                   By:_____

8                         Stuart K. Cohen, OSB #851738
                          James S. Crane, OSB #901420
                          *Of Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 7 -  PLAINTIFF'S   MEMORANDUM   FOR   PROVISIONAL   PROCESS   AND
          PRELIMINARY INJUNCTION

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

689748.14501-002

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR MULTNOMAH COUNTY

CEDAR LAKE HOMEOWNERS
ASSOCIATION, an Oregon domestic
nonprofit corporation; and DECATUR
BRIDGEWATER VISTA CONDOMINIUMS
OWNERS' ASSOCIATION, an Oregon
domestic nonprofit corporation

Plaintiff/Petitioner

vs.

NORTHWEST EMPIRE COMMUNITY
MANAGEMENT, INC., fka Professional
Community Management, Inc., an Oregon
corporation

Defendant/Respondent

Hearing Date:

CASE NO:
1211-14420

AFFIDAVIT OF SERVICE OF:
Temporary Restraining Order and Order to Show
Cause, and Order to Show Cause

ENTERED

NOV 20 2012

IN REGISTER CDR



FILED
12 NOV 15 AM 10: 01
CIRCUIT COURT
FOR MULTNOMAH COUNTY

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times
herein mentioned was a resident of the state of service, over the age of eighteen, not an officer of a
plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve
pleadings in the State named below, and is competent to be a witness therein.

On the **13th day of November, 2012**, at **3:57 PM**, at the address of **3800 NE SANDY Boulevard
SUITE 104, PORTLAND, Multnomah** County, **OR 97232**; this affiant served the above described
documents upon **NORTHWEST EMPIRE COMMUNITY MANAGEMENT, INC.** by then and there
personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same
with **Gregory Lloyd, A brown-haired white male approx. 35-45 years of age, 5'4"-5'8" tall and
weighing 160-180 lbs.**.

No Information was provided or discovered that indicates that the subjects served are members of the
U.S. military.

DATED this _14_ day of _NOV._, 20_12_.

_____
**Don Cummins, Multnomah, OR**

Service Fee Total:
$70.00

SUBSCRIBED AND SWORN to before me this _14_ day of _Nov_, 20_12_



_____
NOTARY PUBLIC in and for the State of **Oregon**
Residing at: _____ _Multnomah_ _____
My Commission Expires: _____ _2/19/16_ _____

FOR: **Landye Bennett Blumstein**
REF: **14533-002; 14501-002**

ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **7508016 PDX FIL**

OFFICIAL SEAL
LAURICE A AVERILL
NOTARY PUBLIC-OREGON
COMMISSION NO. 464984
MY COMMISSION EXPIRES FEBRUARY 19, 2016

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR MULTNOMAH COUNTY

CEDAR LAKE HOMEOWNERS
ASSOCIATION, an Oregon domestic
nonprofit corporation; and DECATUR
BRIDGEWATER VISTA CONDOMINIUMS
OWNERS' ASSOCIATION, an Oregon
domestic nonprofit corporation

Plaintiff/Petitioner

vs.

NORTHWEST EMPIRE COMMUNITY
MANAGEMENT, INC., fka Professional
Community Management, Inc., an Oregon
corporation

Defendant/Respondent

Hearing Date:

CASE NO:
1211-14420

AFFIDAVIT OF SERVICE OF:
Letter, Summons, Complaint, Petition for
Provisional Process, Declaration of Robert S.
Watson, Declaration of Neill Fishman, Temporary
Restraining Order and Order to Show Cause

FILED
12 NOV 14 PM 1:48
FOR CIRCUIT COURT
MULTNOMAH COUNTY

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a resident of the state of service, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **12th day of November, 2012**, at **3:50 PM**, at the address of **3800 NE SANDY Boulevard Suite 104, Portland, OR 97232**; this affiant served the above described documents upon **NORTHWEST EMPIRE COMMUNITY MANAGEMENT, INC.** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Gregory Lloyd, Chief Executive Officer, A black-haired white male approx. 35-45 years of age, 5'8"-6'0" tall and weighing 160-180 lbs.**.

No Information was provided or discovered that indicates that the subjects served are members of the U.S. military.

DATED this 13 day of November, 2012.

_____
Paul Manton, OR

ENTERED
NOV 16 2012
IN REGISTER AM

Service Fee Total:
$140.00

SUBSCRIBED AND SWORN to before me this 13 day of Nov, 2012

_____
NOTARY PUBLIC in and for the State of **Oregon**
Residing at: _____ Multnomah _____
My Commission Expires: _____

FOR: **Landye Bennett Blumstein**
REF: **14501-002**

ORIGINAL AFFIDAVIT OF
SERVICE

Tracking #: **7507991 PDX FIL**



OFFICIAL SEAL
BRIAN L IVY
NOTARY PUBLIC – OREGON
COMMISSION NO. 446216
MY COMMISSION EXPIRES MAY 13, 2014

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

CEDAR LAKE HOMEOWNERS ASSOCIATION, an
Oregon domestic nonprofit corporation; and
DECATUR BRIDGEWATER VISTA
CONDOMINIUMS OWNERS' ASSOCIATION, an
Oregon domestic nonprofit corporation,

        Plaintiffs,

    v.

NORTHWEST EMPIRE COMMUNITY
MANAGEMENT, INC., fka Professional Community
Management, Inc., an Oregon corporation,

        Defendants.

Case No. 1211-14420

SUMMONS

TO:   NORTHWEST EMPIRE COMMUNITY MANAGEMENT, INC., 3000 NE Sandy Boulevard,
Portland, OR 97232

    You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!**

    You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days, along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.

    If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF

James S. Crane             OSB #90142
ATTORNEY'S/AUTHOR'S NAME   BAR NO.90412

Landye Bennett Blumstein LLP / Portland
1300 SW Fifth Avenue, Suite 3500
Portland, OR  97201
503.224.4100 / 503.224-4133 (facsimile)

Trial Attorney if Other than Above Stuart K. Cohen
        BAR NO. 851729

STATE OF OREGON, County of Multnomah ) ss.

    I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons and complaint in the above-entitled action.

ATTORNEY OF RECORD FOR PLAINTIFF(S)

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

ATTORNEY FOR PLAINTIFF(S)

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR  97201
503.224.4100 / 503.224-4133 (facsimile)

*687111.14501-002*

12 NOV 13 PM 3: 14

FILED

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **CEDAR LAKE HOMEOWNERS ASSOCIATION**, an Oregon domestic nonprofit corporation; and **DECATUR BRIDGEWATER VISTA CONDOMINIUMS OWNERS' ASSOCIATION**, an Oregon domestic nonprofit corporation, | Case No. *1211-14430* |
| | **ORDER TO SHOW CAUSE** |
| Plaintiffs, | |
| v. | |
| **NORTHWEST EMPIRE COMMUNITY MANAGEMENT, INC.**, fka Professional Community Management, Inc., an Oregon corporation, | |
| Defendant. | |

ENTERED

NOV 1 4 2012

IN REGISTER BY EG

IT APPEARING to the court that a complaint has been filed by Plaintiffs against Defendant, that Plaintiffs have filed a verified Petition for Issuance of Provisional Process and for a Temporary Restraining Order, and that a Temporary Restraining Order was issued on November _____, 2012,

IT IS HEREBY ORDERED that Defendant and each other person in possession or control of the property described in the Temporary Restraining Order appear before this court on 11/20/, 2012, at 9:00 o'clock a.m. in Room 208 of the Multnomah County Courthouse, 1024 4th Avenue, Portland, Oregon 97204, ~~and then and there show cause~~, for assignment of a show-cause hearing on 11/21 if any there be, why provisional process should not issue as requested by Plaintiffs and why the restraining order should not be continued during the pendency of this action.

Dated this 13th day of November, 2012.

*[signature]*

Circuit Court Judge

Page 1 -   ORDER TO SHOW CAUSE

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

687094.13482-001

1

Submitted by:

2

3

Stuart K. Cohen, OSB #851738
4   James S. Crane, OSB #901420
*Of Attorneys for Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -   ORDER TO SHOW CAUSE

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

1

ENTERED

NOV 1 4 2012

2

IN REGISTER BY EG

12 NOV 13 PM 3: 14

FILED

3            IN THE CIRCUIT COURT FOR THE STATE OF OREGON

4                        FOR THE COUNTY OF MULTNOMAH

5    **CEDAR LAKE HOMEOWNERS**
     **ASSOCIATION**, an Oregon domestic

6    nonprofit corporation; and **DECATUR**
     **BRIDGEWATER VISTA**                        Case No. *1211- 14420*

7    **CONDOMINIUMS OWNERS'**
     **ASSOCIATION**, an Oregon domestic           **TEMPORARY RESTRAINING ORDER**

8    nonprofit corporation,                        **AND ORDER TO SHOW CAUSE**

9                Plaintiffs,

10        v.

11   **NORTHWEST EMPIRE**
     **COMMUNITY MANAGEMENT, INC.,**

12   fka Professional Community Management,
     Inc., an Oregon corporation,

13                Defendant.

14

15       Application having been made by Plaintiffs for the following order, and

16       IT APPEARING to the court that a complaint has been filed by Plaintiffs against

17   Defendant, and that there is probable cause for sustaining the validity of the claim underlying the

18   complaint; and

19       IT FURTHER APPEARING that there is substantial danger that the following-described

20   property may be transferred, removed, or concealed while these proceedings are pending and

21   before a hearing on the order to show cause; and

22       IT FURTHER APPEARING that Plaintiffs have filed an undertaking as required by

23   ORCP 82 in the amount of $ _500-00_ ;

24       IT IS HEREBY ORDERED that Defendant and each other person in possession or

25   control of the property described below are hereby restrained from paying over, destroying,

26   transferring, removing, or otherwise disposing of the property until further order of this court.

Page 1 -   TEMPORARY RESTRAINING ORDER

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

*687018.13482-001*

1      The property to which this restraining order applies is as follows:  Insurance proceeds in

2   the amount of $132,875.70 paid on a claim or claims made by Defendant with its insurers on

3   account of inappropriate allocations of client funds.

4          DATED: November____, 2012.

5                  NOV 1 3 2012

6                                                    _____
                                                          Circuit Court Judge
7

8   Submitted by:

9   _____

10  Stuart K. Cohen, OSB #851738
    James S. Crane, OSB #901420
11  Of Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -   TEMPORARY RESTRAINING ORDER

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

11/09/2012  09:34 503 661 6124                        WCCS                              #0246 P.002 /003

ENTERED

NOV 1 4 2012

IN REGISTER BY EG

12 NOV 13 PM 3: 14

FILED

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

**CEDAR LAKE HOMEOWNERS
ASSOCIATION,** an Oregon domestic
nonprofit corporation; and **DECATUR
BRIDGEWATER VISTA
CONDOMINIUMS OWNERS'
ASSOCIATION,** an Oregon domestic
nonprofit corporation,

                    Plaintiffs,

        v.

**NORTHWEST EMPIRE
COMMUNITY MANAGEMENT, INC.,**
fka Professional Community Management,
Inc., an Oregon corporation,

                    Defendant.

Case No. *1211-14420*

**DECLARATION OF ROBERT S.
WATSON**

Robert S. Watson declares as follows:

1.    I am the President of plaintiff Cedar Lake Homeowners Association ("Cedar Lake").
Cedar Lake is an Oregon nonprofit corporation.  The Cedar Lake subdivision is located in
Gresham.

2.    On or about June 9, 2011, Cedar Lake entered into a Management Agreement with
defendant.  Attached as Exhibit 1 is a true copy of the agreement.

3.    I understand and consent that a signed copy of this declaration that has been faxed to
Cedar Lake's counsel will be submitted to the court.

//////
//////
//////
/////

Page 1 -   DECLARATION OF ROBERT S. WATSON

*WATSON DECLARATION.13482-001*

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (facsimile)

1      I hereby declare that the above statement is true to the best of my knowledge and belief,

2  and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

3      DATED this 9th day of November, 2012.

4

5                                   Robert S. Watson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -   DECLARATION OF ROBERT S. WATSON

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4153 (facsimile)

11/06/2012  16:52 503 661 6124          WCCS                    #0245 P.002 /044

# PCM PROFESSIONAL
# COMMUNITY MANAGEMENT

June 6, 2011

# CEDAR LAKE HOMEOWNERS ASSOCIATION

Board of Directors
Cedar Lake Homeowners Association

RE: Management Services Contract

Dear Board of Directors,

The management services contract has been reviewed and the following changes have been made:

Section **5.4 *Condemnation*** of the Management Services Contract most likely will never apply to a Planned Development, this item has been removed from the contract.

**Schedule A – Community Association Fee Schedule**
Schedule A – Community Association Fee Schedule is a summary of the services and charges included in the management services contract. This document defines charges that may be applicable for the Association at some point and clarifies specific fees outlined in the management services contract. This document is an important part of the contract that will remain.

**Mortgage Application Fee**
The mortgage application fee is a fee charged to homeowners by Professional Community Management for providing important documents required by lenders as a part of the sale process. Professional Community Management will complete the required forms and provide the information on behalf of the Association for a fee of $75. Without these important documents the lender will not consider funding a loan. If we do not provide this information or make it available, it will be the responsibility of the Board of Directors to complete the forms and submit the information. If the documents are not submitted timely or correctly, a sale could be lost and the Association could be in trouble for hindering a sale. The Board does not usually provide these documents because of the liability involved and access to information. This item will remain in the contract.

EXHIBIT _/_
PAGE _/_ OF _20_

# PCM
## PROFESSIONAL
## COMMUNITY MANAGEMENT

June 6, 2011

**After Hours Emergency Response**

After Hours Emergency Response is an important item in our contract.   We changed the wording to make it clear that these calls are for items outside of the Homeowners Association's responsibility.   We do occasionally receive calls from owners for items outside of the management contract - especially if they have had an emergency and would like help sorting out the details.   For example, if a water-pipe inside the home broke, PCM would gladly help the unit owner with mitigation of damage and restoration if desired.   However, the charges related would be paid for by the owner or the owner's insurance.   This is outside of the management contract and would not be covered by the Homeowners Association.   This item will also remain in the contract.

Please let me know if you have any questions.  Thank you.

Yours truly,

Brad

*Brad Atchley*

Brad Atchley, CMCA, AMS, PCAM
Senior Community Manager
Professional Community Management

EXHIBIT ___1___
PAGE _2_ OF _20_

11/08/2012  16:52 503 661 6124                WCCS                      #0245 P.004 /044

# PCM
## PROFESSIONAL
## COMMUNITY MANAGEMENT

June 6, 2011

### CEDAR LAKE HOMEOWNERS ASSOCIATION

### MANAGEMENT AGREEMENT
### ARTICLE I.    PRELIMINARY RECITALS

**A.    REAL PROPERTY COVERED BY THIS AGREEMENT**

1. Association Name: **Cedar Lake Homeowners Association**
2. Address: **Gresham Oregon, Addresses to be added at signing**
3. Declaration Recording Date and Recording Number: **01/25/1993 – 93 009374**
4. Bylaws Recording Date and Recording Number:  **05/02/1994 – 94 0688278**
5. Declarant Name: **Lester H. and Patricia E. Brown**
6. Total Number of Units: **83 Lots / 81 Homes**

**B.    ASSOCIATION (Cedar Lake) AS PARTY TO THIS AGREEMENT**

1. Association Name: **Cedar Lake Homeowners Association**
2. Address: **Gresham Oregon, Addresses to be added at signing**
3. Type of Organization: **Non Profit Corporation, Home Owners Association**
4. Federal Tax ID No.: **To be added at signing.**
5. Corporation Registry No. (If applicable): **N/A**

**C.    MANAGING AGENT (PCM, Inc. – Professional Community Management, Inc.) AS PARTY TO THIS AGREEMENT**

1. Name: **PCM, Inc. – Professional Community Management, Inc.**
2. Address: **PO Box 28205, Portland, OR 97228**
3. Phone: **503-278-3231**
4. Fax: **503-961-8796**
5. E-mail: **info@pcmnw.com**

EXHIBIT _1_
PAGE _3_ OF _20_

## D.    DEFINITIONS

1.    "Association" shall mean a corporation formed under the Oregon Nonprofit Corporation Act, or an unincorporated Oregon Association, its successors and assigns.

2. "Base Fee" shall mean the monthly fee as identified in Section 8(a), (b) and (c), and covers Agent's basic contractual services exclusive of all extraordinary services which may occur by Board direction and exclusive of those services identified in Section 9 and Schedule A of this agreement.

3. "Board" or "Board of Directors" shall mean the Board of Directors of the Association, elected pursuant to the governing documents of the Association.

4. "Budget" shall mean a written, itemized estimate of the expenses to be incurred by the Association in performing its functions under its Declaration and/or Bylaws.

5. "Common Area" shall mean all the real property and improvements, including without limitation, landscape areas and lake, which are owned or controlled by the Association for the common use and enjoyment of all the owners.

6. "Governing Documents" shall mean the Declaration of the Homeowners Association, and other documents, such as Bylaws of the Association, which govern the operation of the Homeowners Association.

7. "Maintenance Assessments" shall mean those rates established and approved by the Board of Directors, which the Association members are bound to pay as their share of the common expenses and reserves. The term "Association" as used herein shall mean an Association consisting of all the Owners of lots in the Homeowners Association organized under the laws of the State of Oregon for the purpose of administering the Homeowners Association established by the Declaration for the real property.

8. ~~"After Hours" shall mean any time outside of normal business hours for PCM Inc. PCM Inc. is open Monday - Friday 8am to 5pm - Pacific Coast Time Zone. PCM Inc. is closed during all major holidays and holidays observed by Banking and US Postal Institutions.~~

2

EXHIBIT  1
PAGE  4  OF  20

11/08/2012  16:52 503 661 6124                    WCCS                        #0245 P.006 /044

## E.    MISCELLANEOUS

In consideration of the covenants herein, the Association as described in B above enters into this Agreement with the Agent to manage the property described in A above for the compensation provided in Section 8 and for the term as set forth in Section 11 and subject to the Retainer Agreement, "Scope Of Services", Terms and Conditions set forth hereafter and made a part of this agreement. These documents are to be construed as one integrated written agreement between the parties, and include the recitals.

This written Agreement supersedes any and all prior representations, understandings and communications, and may be modified only by written agreement of the parties. Any oral agreements or modifications are expressly invalid. This written Agreement is to remain confidential between the Board and Agent, including after any termination of agreement.

This Agreement shall be construed in accordance with, and governed by, the laws of the State of Oregon. If any term, provision, covenant or condition of this agreement, including the Scope of Services, should be found by a Court of competent jurisdiction to be invalid, all other provisions shall continue in full force and effect, and shall in no way be affected, impaired or invalidated. If any legal proceeding is necessary to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and legal costs, in addition to any other relief to which such party may be entitled. The parties agree that this agreement shall be effective as of the date set forth in the TERM OF CONTRACT. (Section 11)

If the Association is incorporated, it is understood and so assured by the signer that the person signing on behalf of the Association is a duly elected officer thereof, and has corporate authority to execute contracts. If Association is unincorporated, and this agreement is signed by both parties prior to the first (organizational) meeting of homeowners, it is understood and assured by the person signing on behalf of Association that the Association automatically assumes or will assume the full legal obligations of this Agreement for the full term stated in this Agreement, and that no provisions to the contrary are or will be included in the Governing Documents.

### ARTICLE II:  "SCOPE OF SERVICES" APPOINTMENT AND ACCEPTANCE

The Association hereby exclusively employs the Agent, and appoints the Agent to manage the Association under the sole direction of the Board of Directors upon the terms and conditions hereinafter set forth. The relationship between the Association and Agent is one of Principal and Agent.

The Managing Agent (hereinafter called "Agent") shall deliver services reasonably necessary to provide Association with management services on behalf of the Association's Board of Directors, and strictly within the scope of this Agreement.

### 1.    MANAGING AGENT'S SERVICES AND RESPONSIBILITIES

1.1    The Association hereby appoints the Agent and the Agent hereby accepts appointment, on the terms and conditions hereinafter provided, as the Agent for the Association.

EXHIBIT  1
PAGE  5  OF  20

1.2     The Association retains the primary responsibility for enforcement of provisions of the Association's governing documents and contractual agreements and assumes liability for any and all acts and occurrences which relate to the actions of the Association, and its actions concerning the real property covered by this contract.

1.3     Agent shall undertake reasonable efforts to implement the lawful decisions of the Board of Directors and in accordance with the Terms and Conditions of this agreement, subject to the compensation schedule set forth herein. Agent shall not be obligated to implement any decision which:

      a)     is contrary to the terms of this Agreement, applicable laws or Governing Documents,

      b)     would involve transactions or services outside the Agent's expertise, knowledge or licenses,

      c)     would involve transactions or services which are not set forth in this Agreement.

1.4     It shall be the responsibility of Agent, during the term of this Agreement, to perform the duties as set forth in this Agreement, consistent with the plans and directives of the Association's Board of Directors, and to perform such other acts as are reasonably necessary to discharge Agent's responsibilities.

## 2.     FINANCIAL MANAGEMENT

2.1     Maintenance Assessments. The Agent shall provide for the collection and deposit of all maintenance assessments at intervals as set by the Board of Directors and agreed to by Agent. Agent shall establish a separate checking account or accounts, with, at its sole discretion, any federally insured institution(s), as is customary with other Associations managed by Agent for the deposit of Association's operating funds. Agent is authorized to provide information to owners' escrow and mortgage companies regarding assessment account status and to charge reasonable processing and administrative set up fees.

2.2     Association Operating Funds. Agent shall establish and maintain Association funds, in a bank of Agent's choice, whose deposits are federally insured and in a manner to indicate the custodial nature thereof, a separate account as Agent of Association for the deposit of monies of Association, with authority to draw thereon for any payments to be made by the Agent to discharge any liabilities or obligations incurred pursuant to this agreement and for the payment of the Agent's fee, all of which payments are subject to the limitations of this agreement. From funds collected, Agent shall cause to be paid the expenses for the operation of Association in accordance with the approved budget or as otherwise authorized by Association's Board of Directors. Any service fees charged for banking services or account maintenance by the bank shall be the responsibility of the Association, and shall be a charge against Association's operating and/or money market accounts. The President, Secretary/Treasurer of the Board of Directors will not have authority to sign checks, only the Agent shall have the authority to sign checks from the Association's account. All checks with the copy of invoice will be mailed to the

4

EXHIBIT ___1___
PAGE _6_ OF _20_

11/08/2012   16:53 503 661 6124                    WCCS                    #0245 P.008 /044

Treasurer for final approval and mailing.  Checks shall not be distributed without the initials of the Treasurer or other appointed Board member.

2.3     Delinquent Accounts. Agent is authorized to take reasonable steps for collection of delinquent accounts. In the event such efforts fail, Agent shall have the authority to record a lien against the delinquent owner's unit in accordance with the Governing Documents, state of Oregon statutes, and the approved collection policy. The Agent is authorized to assess the delinquent account a late charge and a delinquent processing charge, along with other charges for collection, lien and late notice fees, reflective of the costs of collection, accounting, payment plan monitoring and legal proceedings. Agent shall be paid 50% of any late charges billed to accounts. Statutory interest may be charged commencing 30 days after any due date. Reasonable costs of collection, including attorney's fees, are authorized to be charged and collected per Schedule A.

2.4     Disbursement Authorization. Agent is authorized and shall make all disbursements from Association funds for liabilities incurred on behalf of Association. Association acknowledges Agent's role as Paymaster.  Accordingly, such disbursements may be made via paper drafts or electronically at the discretion of Agent. Agent is authorized to utilize all fraud control systems and methods available to Agent for the protection of Association's funds. Agent is hereby granted authority to make any reasonable, non budget expenditure as provided in this section at its own discretion up to $500.00 in any fiscal month. In addition, Agent shall have the authority to make normal and usual expenditures, as prescribed by the Board of Directors and by the Association's approved operating Budget. Agent shall use best efforts to try to obtain approval for any extraordinary expenses of the Association, in advance, as needed.  The Treasurer will be mailed a copy of all checks signed on behalf of the Association with a copy of the invoice for final approval and mailing.  Checks shall not be distributed without the initials of the Treasurer or other appointed Board member.

Emergency repairs involving imminent danger to life or property, or immediately necessary for the preservation and safety of the property, or for the safety of the Members, or required to avoid the suspension of any necessary service to the Association, may be made by the Agent irrespective of the cost limitation imposed by this section.

Agent shall establish Association's reserve accounts at Association's direction. Agent makes no warranty or representations regarding the security or yield of any reserve investment. Except for the disbursements provided for above, all reserve account disbursements will be approved in writing or via email by two members of the Board of Directors, upon which Agent is authorized to sign for such disbursement from a reserve account.

2.5     Accounting and Financial Statements. Agent shall maintain a set of accounting records in accordance with generally accepted accounting principles.

        a)      Agent shall distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of the Balance Sheet, Statement of Income and Expenses, Schedules of Cash Investments, reserve allocations, and a check register of disbursements.



EXHIBIT  1
PAGE  7  OF  20

5

b)    Agent shall reconcile all bank statements and shall provide to the Board copies of both statements and reconciliations.

c)    Agent shall cooperate with auditors in their performance of audits and reviews of Association's records and their preparation of applicable tax returns in accordance with *Schedule A*.

d)    Agent shall, upon direction from the Board of Directors, distribute to all members, at Association expense, copies of annual financial reports, budgets, collection policies, and all other publications and reports deemed necessary by the Board of Directors and applicable laws.

2.6    Budget Preparation.  Agent shall prepare and submit to the Board of Directors a proposed budget annually, cost for such service is outlined in *Schedule A* to this contract. Any budget draft will be subject to final approval by the Board of Directors and the Board shall retain full responsibility for the appropriateness of data contained in the budget. Agent shall use its best efforts to prepare such proposed budget in compliance with any statutes. Any decision to adopt Agent's proposed budget or reserve analysis, or to amend it will be reserved to and exercised solely by the Association's Board of Directors.

2.7    In the event the Association elects to have an outside firm perform a reserve study, Agent agrees to cooperate with said outside firm and to furnish any and all necessary forms and documents in Agent's possession, upon request. Agent shall be compensated in accordance with *Schedule A* for this consultation.

2.8    All postage and supplies associated with this Agreement will be at the expense of the Association and reimbursed to the Agent under conditions of Section 8 hereinafter.

3.    **PHYSICAL MANAGEMENT**

3.1    Maintenance. Agent shall assist the Board of Directors in its responsibilities for the upkeep, maintenance and management of Common Areas and the equipment, pursuant to the Association's documents and within the scope of this agreement.

3.2    Agent shall receive maintenance requests and/or complaints concerning Association's Common Areas, and communicate them to the Board of Directors, or if so directed by the Board, to the appropriate contractors and vendors for correction, repairs or maintenance.

3.3    ~~Agent shall provide a 24 hours per day, 7 days per week call center to assist or refer emergencies in the Common Areas of the Association. Serious matters will be reported to the Association's Board of Directors with appropriate recommendations for the purpose of receiving further instructions from the Board on how to proceed. Agent shall receive and/or assist calls after normal working hours. Agent shall be entitled to a fee for after-hours calls requiring an immediate response in excess of two (2) calls within a given month, in accordance with Schedule A. Unused calls do not carry forward to future months. Onsite visits necessitated, at discretion of Agent, by such calls, shall be charged at the hourly rate in accordance with Schedule A, noted for Manager's Extra Time, portal to portal.~~

6

EXHIBIT _1_
PAGE _8_ OF _20_

3.4    Agent shall perform site visits as outlined in *Schedule A*. Site visits are defined as a review of the Common Areas from ground level only. Agent will submit findings, action taken and recommendations to the Board of Directors to assist in preserving the aesthetics of the common areas. Agent is authorized to initiate routine repairs to the common areas, so long as such repairs and maintenance are in compliance with the Board's adopted management plan created by the Board or within a reserve study if one is present, for the Association, or Section 2.4 herein.

3.5    Bids for Hiring, Supervising and Discharging Third Party Contractors.

a)    Agent shall, upon receipt of instructions or upon resolution of the Board of Directors, request bids from insured vendors of Agent's and Board's selection, with a minimum of two (2) and a maximum of three (3) bids for the types of third party goods or services that Agent believes, in his sole discretion, are likely to cost $3,500.00 or more. Those items for which the Board requests bids that are in the Agent's sole discretion likely to less than $3,500.00 will not be let out for bid, and Agent shall be under no duty to solicit bids for those items. Should the Board wish for Agent to solicit bids for an item costing less than $3,500.00, Agent shall be entitled to an hourly fee in accordance with Section 9.1 of this agreement. Specifications for all items shall be included with the Board's request, and the Board shall be solely responsible for establishing the standards, specifications or criteria for work to be let out for bid. Agent will endeavor to make helpful suggestions; however, the final decision in establishing standards, specifications and criteria shall be the Association Board's.

b)    Agent shall, upon receipt of the Board's written instructions or resolution, discharge contractors that the Board decides are not performing up to the standards, specifications or criteria established by the Board of Directors. Agent, on the basis of an operation schedule, job standards and compensation rates approved by the Association shall investigate, secure and pay third parties in order to maintain and operate the Association. Any contract for such third party contractors will be a direct contract between the Association and the third party contractor, and Agent shall act solely as the Agent of the Association in negotiations and maintenance of said contract, and not as a contracting party. Compensation for the services of all third party contractors shall be paid by the Association. Agent shall have no authority to sign any contract on behalf of Association unless the Board of Directors has granted such authorization to Agent in writing.

~~3.6    Agent is authorized to install a key lockbox in the event one is needed for maintenance purposes in a location mutually agreed upon between Association and Agent.~~

## 4.    ADMINISTRATIVE MANAGEMENT AND CONSULTING

4.1    Agent shall organize the records and documents it receives from the Association or their prior manager or Management Company in accordance with its normal procedures. Within sixty (60) days from receipt of complete records, Agent shall render financial statements

7

EXHIBIT  1
PAGE  9  OF  20

in their usual form showing the financial status of Association, or, if the records are inadequate to prepare such financial statements, Agent shall submit a written recommendation to Association. If such recommendation suggests a review or audit by a third party, or additional investigation and organization of information that will permit the publication of financial statements, Agent shall provide estimated cost of performing such services.

4.2     In accordance with *Schedule A*, Agent shall attempt to first notify owner via phone as a courtesy, write letters and communicate as necessary to assist the Board in carrying out its responsibilities. Agent will also receive and write letters to homeowners and others concerning violations of Association documents and rules, homeowner's requests, architectural and maintenance matters, etc.

4.3     Agent shall counsel and advise Board of Directors and its committees in their day-to-day operations.

4.4     Agent shall assist in interpretation of the rules of the Association and suggest alternative steps of enforcement.

4.5     Agent shall provide, at Association's sole cost and expense, material and expertise in the development of methods of communication to the unit owners (rules and regulations, etc.), as necessary.

4.6     Meeting Notices. In accordance with *Schedule A*, at the Association's sole cost and expense, Agent shall send notices of Association meeting's, prepare the Agenda for said meeting, circulate minutes of any such meetings as prepared by the Secretary, and effect instructions as approved by the Board of Directors.

4.7     In accordance with *Schedule A*, Agent shall assist in preparation for Association Annual Homeowners Meeting, including notices, proxies, ballots and agenda.

4.8     Agent shall not be responsible to record and/or type minutes of regular meetings of the Board of Directors or the Annual Meeting of the Association. Upon request by the Board of Directors, Agent shall coordinate a third party to serve as recording secretary, the costs for this service shall be borne by the Association.

4.9     Association Records. Agent shall maintain possession of all records, with the exception of correspondences, of the affairs of the Association throughout the term of this Agreement. Agent shall maintain possession of correspondences for a limited period of six years from the date received by Agent.   While Agent shall put forth every effort to maintain Association records in good order, Agent makes no representation or warranty as to the accuracy and/or completeness of such records. Accuracy and/or completeness of the Association records remain the responsibility of the Association.

4.10    Review of Records. During the term of this Agreement, Agent shall make Available for review by the Board all records in Agent's possession that pertain to the Homeowners Association, with the exception of correspondences.  Correspondences pertaining

8

11/08/2012  16:53 503 661 6124          WCCS                    #0245 P.012 /044

to the Homeowners Association shall only be held by Agent for a period of six years from the date received by Agent, after which time such correspondences shall not be retained by Agent. Association agrees that Agent shall charge a fee in accordance with *Schedule A* for records research and for the scheduling and monitoring of such a review.

4.11    Special mailings and newsletters requested by the Board, as prepared by the Association and Agent, shall be prepared, duplicated and mailed at the expense of the Association. All requests for copies of project documents, correspondence, reports, etc., will be at the expense of the Association.

4.12    Agent shall not be responsible for any contractor, sub-contractor or Association Employee's work performance or adherence to specifications or schedules.

4.13    Agent shall attend Annual Homeowners Association Meeting in accordance with Schedule A.  Agent shall attend Boards of Director Meetings in accordance with *Schedule A.* Meetings shall be at the direction of the Board of Directors.

## 5.    TERMINATION OF AGREEMENT

5.1    Termination. Either party may terminate this agreement by providing sixty (60) days written notice to the other. This termination provision may be invoked with or without cause. Upon such notice of termination, both parties agree that this Agreement shall remain in full force and effect for the entire sixty (60) days.

5.2    Arbitration Provision. In the event of a dispute over the performance and/or non-performance by either party in this agreement, the alleging party shall offer arbitration to the offending party prior to initiating legal action to gain compliance with the terms and conditions set forth by this agreement.

Prior to requesting arbitration, the alleging party must provide the offending party written notice of the dispute. Such notice shall allow for a reasonable time, not to exceed thirty (30) days, for the offending party to comply with this Agreement. After the expiration of said thirty days, the alleging party can proceed to binding arbitration. Upon acceptance of a written demand for arbitration, the dispute shall be submitted to arbitration with a single arbitrator mutually selected by the parties from a list of five arbitrators submitted by the American Arbitration Association. The determination of the arbitrator shall be binding upon both parties. The arbitration shall be conducted pursuant to the rules of the American Arbitration Association and shall be submitted within 120 days of submission. Upon making a written demand for arbitration, the dispute shall be submitted promptly to an arbitrator mutually selected by the parties and the determination of the arbitrator shall be binding upon both parties. If the arbitrator shall determine that offending party has committed a material breach of this Agreement, then such finding shall furnish the aggrieved party with the right to terminate the contract 30 days after the final decision of the arbitrator. In the event that the parties cannot mutually select a single arbitrator, the arbitrator will be selected by the American Arbitration Association from the remaining names.

5.3     Termination Fee. Each party shall be responsible for any costs they incur in the termination of this agreement. Agent shall be reimbursed for all duplication costs and transition materials including boxes, files, postage and any delivery costs.

~~5.4     Condemnation. Upon taking of the entire or a substantial portion of the Project through lawful condemnation proceedings by any governmental party, either party may terminate this agreement by serving 30 days written notice by certified mail to the other party.~~

## 6.     RECORD RETENTION

6.1     The Association's current records shall be kept at the Agent's office. Such records shall be available for inspection and copying during Agent's normal business hours in accordance with Oregon state laws and the Governing Documents, Monday through Friday. Agent shall be entitled to charge and receive copying and document research costs, as set forth in *Schedule A*, from anyone requesting copies of records or documents, before making such copies. Agent shall be entitled to reasonable notice prior to such inspection or copying of records.

6.2     Homeowners Lists. Agent shall maintain a current list of homeowners in the Association in accordance with the information supplied to Agent. Reasonable efforts will be made to keep this list accurate, but it shall be the responsibility of the Association to advise Agent of address or ownership changes of which it becomes aware. Agent shall not be obligated to search official records or other record sources for such transfers of ownership unless specifically requested to do so by the Board at hourly rates set forth in this agreement. Agent will record changes of address of ownership upon advice from owners, with supporting documentation.

6.3     Correspondence. Agent shall maintain documents and complete files for all current correspondences relating to Association, such as incoming homeowner correspondence, violation and architectural control letters, contracts, purchase orders, filing with public agencies, insurance policies and information and other related documents. Correspondences shall only be retained by the Agent for six (6) years from the date received, after which such correspondences may be disposed of by Agent. Agent shall only retain electronic copies of correspondences.

6.4     All records and correspondence regarding Association are and will remain the sole property of Association. Agent agrees to return any and all such records and correspondence to the Association, or to an entity or person designated in writing by the Board of Directors upon termination of this Agreement. Such records shall be available for pick up at Agent's office or such other designated location as may be agreed upon. Electronic media, such as computer tape, discs, and general electronically stored databases are the sole property of the Agent. However, Agent shall provide Association with a hard copy of all such records, as requested, at the sole cost and expense of the Association per *Schedule A*.

6.5     Agent agrees to maintain storage of Association records and correspondence at the sole cost and expense of the Association per *Schedule A*.

## 7.    INSURANCE AND INDEMNIFICATION

### AGENT'S INSURANCE

7.1    Agent shall, throughout the term of this Agreement, and at Agent's expense, maintain the following insurance coverage:

    a)    Fidelity bond or employee dishonesty insurance will be provided for all Agent's employees, when applicable, to protect Association funds.

    b)    Agent's liability insurance and comprehensive general liability coverage, including automobile liability, completed operations, blanket contractual and personal injury coverage, with combined single limits of $1,000,000 property damage and liability.

    c)    Workers Compensation Insurance in the statutory amount, covering any of Agents employees.

### ASSOCIATION INSURANCE

7.2    Association shall maintain at its sole expense a policy of comprehensive general liability, Directors and Officers, worker's compensation and property insurance (as necessary) in accordance with the Governing Documents and applicable Oregon State codes.

7.3    Association shall name Agent as an additional named insured on the Association's policies of comprehensive general liability and said insurance policies shall cover Agent for any and all claims and losses indemnified by Association pursuant to Section 7.7. Agent shall be provided with insurance certificates identifying Agent as additional insured showing the amount of coverage to be furnished to the Agent.

7.4    In the mutual interest of Association and Agent, both parties agree that fidelity insurance coverage protecting Association funds shall be a crime policy, so long as such coverage is available. The limits of the crime policy shall be no less than the total amount of the Association's reserve funds plus three (3) months total assessment income.

7.5    In the event the Association fails to maintain agreed upon insurances, Agent may unilaterally terminate this Agreement immediately, and the provisions of Section 5.1 above shall not be applicable to Agent's action.

7.6    Agent shall maintain reasonable communication with Association's insurance agent and will assist the Board in reviewing and renewing insurance coverage, including solicitation of bids for such coverage. The Board of Directors is solely responsible for maintaining insurance coverage for the Association, and for adequacy of coverage.

## INDEMNIFICATION

7.7     Association shall indemnify, defend, and hold harmless Agent and its employees, agents, officers and directors from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, judgments, orders and damages, including interest, penalties and attorney's fees, that Agent shall incur or suffer, which arise, result from or relate to the performance by Agent of its duties under this Agreement in good faith and in the ordinary course of business, except for the willful misconduct or gross negligence of Agent This includes, without limitation and, for example, a situation in which Agent is made a party to litigation, arbitration or other proceeding brought by a unit owner, a member, a contract vendor of the Association, or an outside party by reason of Agent's position as Agent or its activities hereunder. This provision shall survive any termination of this Agreement.

7.8     Agent shall only be responsible for the willful misconduct or gross negligence where such liability is due to the sole conduct of Agent and/or its employees in its performance of its duties under this Agreement.

## 8.     COMPENSATION  ENHANCED MANAGEMENT SERVICE

In consideration of Agent's acceptance of its appointment hereunder and the performance of services as set forth herein, the compensation to which the Agent shall be entitled will consist of fees for basic services (Base Fee) which are considered due upon execution of this Agreement, but are paid monthly, along with those fees and costs for special or extraordinary services as set forth in *Schedule A.*

a)     Agent shall be paid in advance on the first day of each month without prior Association approval.

In accordance with *Schedule A*, the total monthly base fee will remain in effect for a period of 1-year from date of contract signing.

b)     The base fee, as defined, shall be net to Agent and is exclusive of the Association's operating expenses and costs. The base fee shall be superseded by the adoption of a new annual Association budget indicating an adjusted base fee for management services. Adoption of the annual budget by the Association's Board of Directors shall constitute an approval of a base fee change under this Agreement as noted in section 8c, but in no event shall the base fee be less than the amount stated in *Schedule A.*

c)     Annual increase.  During the budget process, PCM reserves the right to review each contract and increase the management fee as necessary to cover the costs associated with management services.  This increase shall be approved during the budget process and shall not exceed 5% per year.

12

EXHIBIT  1
PAGE  14 OF 20

d)      In the event that an emergency occurs, and Agent reasonably believes that responding to the emergency would cause Agent to exceed the prescribed hours, Agent will make all reasonable efforts, given the circumstances, to notify Association and receive authorization to proceed. However, Association's lack of timely response shall not prevent Agent from responding to protect Association in a reasonable manner.

8.1     Agent's Fees and Costs. Any base fees and costs due the Agent will be paid promptly each month on the first of each month. Any monies due and billed and not paid to Agent by the fifteenth (15th) of each month will carry a 1.5% per month late fee which will be added to the balance due and will be subject to further late charges until paid. Interest at the maximum legal rate to be charged thirty (30) days after any amounts are delinquent.

8.2     Reimbursable Administrative Operating Expenses. The Association shall reimburse Agent for all postage costs incurred by Agent on Association's behalf. In addition, Association will reimburse Agent for all reasonable expenses incurred on behalf of the Association including, but not limited to, those expenses listed in *Schedule A* attached hereto, as may be amended from time to time, and included herein. Said costs will be reimbursed on a monthly basis as incurred and billed.

8.3     Deduction of Agent's Compensation. Association shall be obligated to pay, and Agent shall receive as compensation for its services under this Agreement the sum provided for in this section herein and above at the times therein set forth. Agent is entitled to deduct such compensation when due from the funds then in its possession. Agent's compensation covers normal and usual administration expenses of Agent required by actions of the Board of Directors.

## 9.   SPECIAL OR EXTRAORDINARY SERVICES

9.1     Association shall pay Agent compensation in accordance with *Schedule A* for services performed on behalf of Association outside the normal course of operation or outside the parameters of this agreement. These items shall include, but not be limited to, hours spent in oversight or management of work directly related to construction defect claims and/or time specifically expended in oversight or management of major reconstruction project(s).

9.2     Agent may be required to perform additional services beyond the scope of these services, for which the above fees, or the current rates that are then applicable, will be charged by the work performed. Examples of such services are, but not limited to:

a)      Assistance in adhering to requirements of laws and regulations, which may be passed during the term of the Agreement that requires Agent participation.

b)      Agent shall be paid per hour, at the Manager's rate as shown in *Schedule A*, portal to portal, for work performed by Agent on behalf of Association, including but not limited to, appearance at court, at hearings, depositions, claims negotiations and processing of insurance losses or reconstruction, performing committee functions, such as

13

EXHIBIT ___1___
PAGE _15_ OF _20_

monitoring, reporting and updating of any architectural progress, development status reports, bank loans, investments, maintenance, construction defect matters, financial reconstruction, discovery on Association's acts prior to the original commencement date of this Agreement.

Agent shall only be paid for the services identified above if performing said services cannot be accomplished, along with Agent's other duties defined herein, within the hours prescribed by Section 8, paragraph (c) of this Agreement.

     c)    If requested by Board to attend meeting, Agent shall be paid per hour, at the Manager's rate, for attendance at Board or annual meetings, minimum of one (1) hour, and in half-hour increments thereafter. Portal to portal time will apply if meeting location is greater than 20 miles from Agent's main office.

## 10.   ASSOCIATION SET UP FEE

10.1    Agent shall be paid a one-time, non-refundable fee as indicated in *Schedule A*. This fee is due at the commencement of this Agreement to offset the costs of setting up the Association's records. Not included in such set up fee are bank charges or Board authorized independent accountant fees, which may also be incurred.

## 11.   TERM OF CONTRACT

11.1    Commencement Date. After execution of this contract by the Association's Board of Directors, Agent's compensation shall commence upon the day indicated in the following paragraph.

11.2    This Agreement shall commence upon signing and shall continue in full force and effect for twelve months, and thereafter from month to month.

## 12.   AGENT AND ASSOCIATION PROTECTION

12.1    Agent's Employees. Agent spends significant amounts of time and money to hire and train employees for the operation of this and other Associations. Association derives and benefits from Agent's management experience, their hiring and training procedures. Association agrees it will not hire, retain, or contract with any employee, partner, officer, or co-owner of agent or its parent company or divisions in any capacity whatsoever for a period of six (6) months following the termination of this Agreement or any extension thereof. Association agrees to pay Agent the sum of Ten Thousand Dollars ($10,000.00) as liquidated damages if it breaches this provision of the Agreement. Both parties agree that this is a reasonable sum due to the extensive training and trade secrets that Agent provides, as well as expectation of continued income and allotment of resources, and further with respect to the difficulty in establishing the amount of actual damages.

14

EXHIBIT  *1*
PAGE  *16*  OF  *20*

11/08/2012  16:55  503 661 6124          WCCS                    #0245 P.016 /044

12.2    Association shall have access to and be dealing with trade secrets of Agent, such as: confidential information pertaining to client lists; procedures, processes and documentation relating to management of Agent's client Associations; and programs, software, procedures and techniques relating to data processing and financial reporting. Association agrees to hold any such trade secrets or confidential information, attained during the course of this Agreement, in the strictest confidence, and shall retain a total confidentiality, giving value to protecting them from Agent's competitors. This provision shall survive termination of this Agreement.

12.3    All materials of a confidential nature, prepared and utilized in Agent's performance of their duties under this Agreement, shall remain the exclusive property of Agent, and shall be retained in Agent's possession.

## 13.    MISCELLANEOUS

13.1    Advances and Charges. Agent shall not be required to, perform any act or duty hereunder involving the expenditure of money unless Agent shall have in its possession sufficient funds of the Association available. Therefore, if at any time the funds in the possession of Agent are not sufficient to pay the charges incident to this Agreement, Agent, shall not be responsible to advance its own funds for any reason, and the Association agrees, in such cases, that upon notice thereof by Agent, the Association shall make immediate arrangements to make funds available to cover the insufficiency.

13.2    Agent shall receive communications and directions from any Association Director, and shall present the direction to the Board as a whole.  PCM will act on behalf of the Board when a majority of the Board votes in favor of an action either in writing, email, or noted in the minutes from an open Board Meeting.   Should a conflict arise between Directors, PCM will wait until a majority of the Board members are in agreement before taking action.

The Association Board of Directors understands its fiduciary duties, and agrees to govern the Association in a businesslike manner, acting in good faith and in the best interest of the Association and will work to adopt a business management plan for the future of the Association.

13.3    Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Association. This Agency agreement shall be binding on the parties hereto, their heirs, executors, administrators, successors and assignees, and constitutes the full agreement except that subsequent changes or additional provisions must be agreed upon in writing and executed by both parties.

Notwithstanding the preceding sentence, the Agent shall not assign its interest under this Agreement except in connection with the sale of all or substantially all of the assets of its management business. In the event of such a sale, Agent shall be released from all liability by the Association.

13.4    Association and Agent acknowledge that they have carefully read and reviewed this agreement and each term and provision contained herein including any addendums or

15

EXHIBIT ___1___
PAGE __17__ OF _20_

additions such as "*Schedule A – Community Association Fee Schedule*" and by execution of this Agreement show their informed and voluntary consent thereto. The parties hereby agree that, at the time this Agreement is executed, the terms of this Agreement are commercially reasonable and effectuate the intent and purposes of the Association and Agent with respect to the service agreement.

14.    **DISCLAIMER**

No representation or recommendation is made by the Agent or its employees as to the legal sufficiency, legal effect, or other consequences of this Agreement. The parties shall rely solely upon the advice of their own legal counsel as to the legal and other consequences of this Agreement.

By affixing signatures below, both Association and Management Agent agree to the terms, conditions and provisions specified by this Agreement.

ASSOCIATION:                          AGENT:

By: _____        By: _____

Title: President                      Title: Senior Community Manager

Date: 6/9/2011                        Date: 6-9-11

11/08/2012  16:55  503 661 6124                    WCCS                           #0245 P.020 /044


## PROFESSIONAL COMMUNITY MANAGEMENT

### *Schedule A*
## Community Association Fee Schedule
*FOR*
## Cedar Lake Homeowners Association

### Account Fees

| | |
|---|---|
| Initial Set-up Fee                                    (Waived - $0.00 Per Unit) | $0.00 |
| Monthly Management Fee – Includes ~~Quarterly~~ Up to Three (3) Board Meetings Per Year Including Preparation and Attendance | ~~$705.00~~ $475.00 |

### Additional Fees and Charges to the Association

| | |
|---|---|
| Special Mailings (Information Postcards, etc – Upon Request) | $105.00 |
| Annual Meeting Organization, Notice & Voting Ballots (~~Quarterly~~ Up to three (3) Board Meetings per year  including preparation and attendance – Monday through Friday - included in fee) | ~~$250.00~~ Included |
| Special Meeting Organization, Notice and Voting Ballots | $250.00 |
| Site Inspections – Up to Twelve (12) | Included |
| New Board Member Training & Orientation (Through PCM's On-line Training and Resource Center) | Included |
| Monthly Financial Statements | Included |
| Excessive Violation Charge (Defined as more than 20% or 16 units having a violation in a single month) | $75.00 |
| Capital Project Management (Projects in excess of $3,500.00) – *As requested by Board* | 10% of Total Project Cost |
| Architectural Application Processing – *As requested by Board* | $35.00 Each |
| Bids for Repairs or Service | $35.00 Each |
| Yearly Budget Preparation | ~~$250.00~~ Included |
| Yearly Maintenance Plan Update | ~~$250.00~~ Included |
| End of Year 1099 Preparation (Fee Per Vendor) (Tax preparation is a separate charge) | $15.00 Each |
| Assisting with Insurance Claims Process | $105.00 Per Hour |
| All Postage Used for Association Purposes | U.S. Postal Rates |
| B&W Paper Copies | $0.20 Each |
| Color Copies | $0.58 Each |
| Check Stalk – Check Printing Charges | $0.32 Each |
| Envelopes | $0.15 Each |
| Late Fee Assessments | 50% of Collected Charge |
| After Hours Emergency for HOA Related Items | $35.00 |
| After Hours Onsite Presence for HOA Related Items | $105.00 Per Hour |
| Electronic Document Storage & Record Retention | Included |
| Website – Including Monthly Updates | Included |

*Please Note: PCM does not charge for Bank fees, document scanning, faxes or long distance phone calls.*

PROFESSIONAL COMMUNITY MANAGEMENT LLC
(503) 278-3231 • PO Box 28205 Portland, OR 97228 • WWW.PCMNW.COM

EXHIBIT  / 
PAGE  /9  OF  20



## PROFESSIONAL COMMUNITY MANAGEMENT

### *Schedule A*
### Community Association Fee Schedule
#### *FOR*
### Cedar Lake Homeowners Association

#### Additional Fees and Charges to Individual Owners
These fees are charged to the homeowner as a pass through fee for the
Association and are not a direct fee to the HOA.

| | |
|---|---|
| Rules Enforcement Letter -- Notice of Violation | $35.00 Per Letter |
| Intent to Lien Letter | $50.00 |
| Preparation, Recording & Release of Lien (This does not include attorney fees) | $250.00 |
| Processing Returned Checks (fee does not include bank charges) | $45.00 |
| Replacement of Common Area Access Cards and/or Keys | $25.00 |
| New Home Owner Set-up Fee (New Buyer) | $75.00 |
| Mortgage Application Fee - *In the event the transaction does not close we will not collect the fee* (Includes condo cert, budget, financials & 12-months of Board Meeting Minutes) | $75.00 |
| Escrow Administration - *In the event the transaction does not close we will not collect the fee* | $75.00 |
| Additional or Replacement Copies of Governing Documents (Email copies or copies via the Association's website are free) | $15.00 + Postage |
| After Hours Emergency Calls (If issue is not HOA Related) | $35.00 |
| After Hours Emergency Onsite Presence (If issues is not HOA related) | $105.00 Per Hour |

### *Any other services or activities will be charged at cost of materials plus $105 per hour*
**\*\*Costs of the above services may be subject to change w/out notice**

*6/9/2011*
**Initial & Date**

ENTERED

NOV 1 4 2012

12 NOV 13 PM 3:14

FILED

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

1

2

3

4

5   **CEDAR LAKE HOMEOWNERS
    ASSOCIATION**, an Oregon domestic
6   nonprofit corporation; and **DECATUR
    BRIDGEWATER VISTA**
7   **CONDOMINIUMS OWNERS'
    ASSOCIATION**, an Oregon domestic
8   nonprofit corporation,

9            Plaintiffs,

10       v.

11  **NORTHWEST EMPIRE
    COMMUNITY MANAGEMENT, INC.**,
12  fka Professional Community Management,
    Inc., an Oregon corporation,
13
             Defendant.
14

Case No. *1211-14420*

**DECLARATION OF NEILL FISHMAN**

15       Neill Fishman declares as follows:

16       1.     I was the Treasurer of the plaintiff Decatur Bridgewater Vista Condominiums

17  Owners' Association ("Decatur Bridgewater") Board of Directors for the two years ending

18  September 24, 2012.  I am currently serving as the Chair of the Board's Embezzlement Claim

19  Committee.  Decatur Bridgewater is an Oregon nonprofit corporation.  The Decatur Bridgewater

20  condominiums are located in Portland.

21       2.     On or about November 14, 2010, Decatur Bridgewater entered into a Management

22  Agreement with defendant.  Attached as Exhibit 1 is a true copy of the agreement.

23       3.     On or about June 6, 2012, Decatur Bridgewater received an email from Greg Lloyd at

24  Northwest Empire Community Management, Inc.  This email stated that Decatur Bridgewater's

25  funds had been "inappropriately allocated".  A copy of the email is attached as Exhibit 2.

26       4.     I understand and consent that a signed copy of this declaration that has been scanned

Page 1 -   DECLARATION OF NEILL FISHMAN

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

*687014.13482-001*

1    and sent to Decatur Bridgewater's counsel will be submitted to the court.

2         I hereby declare that the above statement is true to the best of my knowledge and belief,

3    and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

4         DATED this _/2_ day of November, 2012.

5

6

         Neill Fishman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -    DECLARATION OF NEILL FISHMAN

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law

687014.13482-001

# CONDOMINIUM MANAGEMENT AGREEMENT
## ARTICLE I.   PRELIMINARY RECITA

**A.   REAL PROPERTY COVERED BY THIS AGREEMENT**

1. Condominium Name: Bridgewater Vista Condominium *Decatur ou*

2. Address:   8712 N Decatur St. 101 - 505 Portland, OR 97203

3. Declaration Recording Date and Recording Number:

4. Bylaws Recording Date and Recording Number:

5. Declarant Name:

6. Total Number of Units: 29 Residential Units, 29 Parking Spaces & 34 Storage Units

**B.   ASSOCIATION OF BRIDGEWATER VISTA AS PARTY TO THIS AGREEMENT** *Decatur oru*

1. Association Name:   AOU of Bridgewater Vista Condominium *Decatur Ava*

2. Address:   8712 N Decatur St. 101 - 505 Portland, OR 97203

3. Type of Organization:   Non Profit Corporation, Home Owners Association

4. Federal Tax ID No.:

5. Corporation Registry No. (If applicable):

**C.   MANAGING AGENT (PCM, Inc. – Professional Community Management, Inc.) AS PARTY TO THIS AGREEMENT**

1. Name:   PCM, Inc. – Professional Community Management, Inc. - Gregory Lloyd

2. Address:    PO Box 28205, Portland, OR 97228

3. Phone:    503-278-3231

4. Fax:    503-961-8796

5. E-mail:    gregory@pcmnw.com

UAE 11-14-10

*[signature]* 11/14/10

Initial & Date

EXHIBIT _1_
PAGE _1_ OF _18_

**D.    DEFINITIONS**

1.  "Association" shall mean a corporation formed under the Oregon Nonprofit Corporation Act, or an unincorporated Oregon Association, its successors and assigns.

2.  "Base Fee" shall mean the monthly fee as identified in Section 8(a), (b) and (c), and covers Agent's basic contractual services exclusive of all extraordinary services which may occur by Board direction and exclusive of those services identified in Section 9 and Exhibit A of this agreement.

3.  "Board" or "Board of Directors" shall mean the Board of Directors of the Association, elected pursuant to the governing documents of the Association.

4.  "Budget" shall mean a written, itemized estimate of the expenses to be incurred by the Association in performing its functions under its Declaration and/or Bylaws.

5.  "Common Area" shall mean all the real property and improvements, including without limitation, streets, open parking areas, landscape areas and recreational facilities, which are owned or controlled by the Association for the common use and enjoyment of all the owners.

6.  "Governing Documents" shall mean the Declaration of the Condominium, and other documents, such as Bylaws of the Association, which govern the operation of the Condominium.

7.  "Maintenance Assessments" shall mean those rates established and approved by the Board of Directors, which the Association members are bound to pay as their share of the common expenses and reserves. The term "Association" as used herein shall mean an association consisting of all the Owners of units in the Condominium organized under the laws of the State of Oregon for the purpose of administering the Condominium established by the Declaration for the real property.

**E.    MISCELLANEOUS**

In consideration of the covenants herein, the Association as described in B above enters into this Agreement with the Agent to manage the property described in A above for the compensation provided in Section 8 and for the term as set forth in Section 11 and subject to the Retainer Agreement, "Scope Of Services", Terms and Conditions set forth hereafter and made a part of this agreement. These documents are to be construed as one integrated written agreement between the parties, and include the recitals.

This written Agreement supersedes any and all prior representations, understandings and communications, and may be modified only by written agreement of the parties. Any oral agreements or modifications are expressly invalid. This written Agreement is to remain confidential between the Board and Agent, including after any termination of agreement.

ME 11-14-10
Initial & Date

auv 11/14/10

This Agreement shall be construed in accordance with, and governed by, the laws of the State of Oregon. If any term, provision, covenant or condition of this agreement, including the Scope of Services, should be found by a Court of competent jurisdiction to be invalid, all other provisions shall continue in full force and effect, and shall in no way be affected, impaired or invalidated. If any legal proceeding is necessary to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and legal costs, in addition to any other relief to which such party may be entitled. The parties agree that this agreement shall be effective as of the date set forth in the TERM OF CONTRACT. (Section 11)

If the Association is incorporated, it is understood and so assured by the signer that the person signing on behalf of the Association is a duly elected officer thereof, and has corporate authority to execute contracts. If Association is unincorporated, and this agreement is signed by both parties prior to the first (organizational) meeting of unit owners, it is understood and assured by the person signing on behalf of Association that the Association automatically assumes or will assume the full legal obligations of this Agreement for the full term stated in this Agreement, and that no provisions to the contrary are or will be included in the Governing Documents.

## ARTICLE II: "SCOPE OF SERVICES" APPOINTMENT AND ACCEPTANCE

The Association hereby exclusively employs the Agent, and appoints the Agent to manage the Association under the sole direction of the Board of Directors upon the terms and conditions hereinafter set forth. The relationship between the Association and Agent is one of Principal and Agent.

The Managing Agent (hereinafter called "Agent") shall deliver services reasonably necessary to provide Association with management services on behalf of the Association's Board of Directors, and strictly within the scope of this Agreement.

### 1.    MANAGING AGENT'S SERVICES AND RESPONSIBILITIES

1.1    The Association hereby appoints the Agent and the Agent hereby accepts appointment, on the terms and conditions hereinafter provided, as the Agent for the Association.

1.2    The Association retains the primary responsibility for enforcement of provisions of the Association's governing documents and contractual agreements and assumes liability for any and all acts and occurrences which relate to the actions of the Association, and its actions concerning the real property covered by this contract.

1.3    Agent shall undertake reasonable efforts to implement the lawful decisions of the Board of Directors and in accordance with the Terms and Conditions of this agreement, subject to the compensation schedule set forth herein. Agent shall not be obligated to implement any decision which:

*[handwritten initials and dates]*

Initial & Date

EXHIBIT   1
PAGE   3   OF   18

a)    is contrary to the terms of this Agreement, applicable laws or Governing Documents,

b)    would involve transactions or services outside the Agent's expertise, knowledge or licenses,

c)    would involve transactions or services which are not set forth in this Agreement.

1.4    It shall be the responsibility of Agent, during the term of this Agreement, to perform the duties as set forth in this Agreement, consistent with the plans and directives of the Association's Board of Directors, and to perform such other acts as are reasonably necessary to discharge Agent's responsibilities.

## 2.    FINANCIAL MANAGEMENT

2.1    Maintenance Assessments. The Agent shall provide for the collection and deposit of all maintenance assessments at intervals as set by the Board of Directors and agreed to by Agent.  Agent shall establish a separate checking account or accounts, with, at its sole discretion, any federally insured institution(s), as is customary with other Associations managed by Agent for the deposit of Association's operating funds. Agent is authorized to provide information to owners' escrow and mortgage companies regarding assessment account status and to charge reasonable processing and administrative set-up fees.

2.2    Association Operating Funds. Agent shall establish and maintain Association funds, in a bank of Agent's choice, whose deposits are federally insured and in a manner to indicate the custodial nature thereof, a separate bank account as Agent of Association for the deposit of monies of Association, with authority to draw thereon for any payments to be made by the Agent to discharge any liabilities or obligations incurred pursuant to this agreement and for the payment of the Agent's fee, all of which payments are subject to the limitations of this agreement. From funds collected, Agent shall cause to be paid the expenses for the operation of Association in accordance with the approved budget or as otherwise authorized by Association's Board of Directors. Any service fees charged for banking services or account maintenance by the bank shall be the responsibility of the Association, and shall be a charge against Association's operating and/or money market accounts. The President, Secretary/Treasurer of the Board of Directors will not have authority to sign checks, only the Agent shall have the authority to sign checks from the operating and reserve account on behalf of the association.

*[handwritten initials]* 11/19/10

*[handwritten initials]* 11-14-10

Initial & Date

EXHIBIT _1_
PAGE _4_ OF _18_

2.3    Delinquent Accounts. Agent is authorized to take reasonable steps for collection of delinquent accounts. In event such efforts fail, Agent shall have the authority to record a lien against the delinquent owner's unit in accordance with the Governing Documents, state of Oregon statutes, and the approved collection policy. The Agent is authorized to assess the delinquent account a late charge and a delinquent processing charge, along with other charges for collection, lien and late notice fees, reflective of the costs of collection, accounting, payment plan monitoring and legal proceedings. Agent shall be paid 50% of any late charges billed to accounts. Statutory interest may be charged commencing 30 days after any due date. Reasonable costs of collection, including attorney's fees, are authorized to be charged and collected per Exhibit A.

2.4    Disbursement Authorization. Agent is authorized and shall make all disbursements from Association funds for liabilities incurred on behalf of Association. Association acknowledges Agent's role as Paymaster. Accordingly, such disbursements may be made via paper drafts or electronically at the discretion of Agent. Agent is authorized to utilize all fraud control systems and methods available to Agent for the protection of Association's funds. Agent is hereby granted authority to make any reasonable, non-budget expenditure as provided in this section at its own discretion up to $5500.00 in any fiscal month. In addition, Agent shall have the authority to make normal and usual expenditures, as prescribed by the Board of Directors and by the Association's approved operating Budget. Agent shall use best efforts to try to obtain approval for any extraordinary expenses of the Association, in advance, as needed.

Emergency repairs involving imminent danger to life or property, or immediately necessary for the preservation and safety of the property, or for the safety of the Members, or required to avoid the suspension of any necessary service to the complex, may be made by the Agent irrespective of the cost limitation imposed by this section.

Agent shall establish Association's reserve accounts at Association's direction. Agent makes no warranty or representations regarding the security or yield of any reserve investment. Except for the disbursements provided for above, all reserve account disbursements will be signed by two members of the Board of Directors, unless the Agent is authorized in writing by two (2) members of the Board of Directors to sign for such disbursement from a reserve account.

2.5    Accounting and Financial Statements. Agent shall maintain a set of accounting records in accordance with generally accepted accounting principles.

a)    Agent shall distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of the Balance Sheet, Statement of Income and Expenses, Schedules of Cash Investments, reserve allocations, and a check register of disbursements.

b)    Agent shall reconcile all bank statements and shall provide to the Board

*Initial & Date*

EXHIBIT 1
PAGE 5 OF 18

copies of both statements and reconciliations.

      c)     Agent shall cooperate with auditors in their performance of audits and reviews of Association's records and their preparation of applicable tax returns in accordance with Exhibit A.

      d)     Agent shall, upon direction from the Board of Directors, distribute to all members, at Association expense, copies of annual financial reports, budgets, collection policies, and all other publications and reports deemed necessary by the Board of Directors and applicable laws.

    2.6     Budget Preparation. Agent shall prepare and submit to the Board of Directors a proposed budget. Any budget draft will be subject to final approval by the Board of Directors and the Board shall retain full responsibility for the appropriateness of data contained in the budget. Agent shall use its best efforts to prepare such proposed budget in compliance with any statutes. Any decision to adopt Agent's proposed budget or reserve analysis, or to amend it will be reserved to and exercised solely by the Association's Board of Directors.

    2.7     In the event the Association elects to have an outside firm perform a reserve study, Agent agrees to cooperate with said outside firm and to furnish any and all necessary forms and documents in Agent's possession, upon request. Agent shall be compensated in accordance with Exhibit A for this consultation.

    2.8     All postage and supplies associated with this Agreement will be at the expense of the Association and reimbursed to the Agent under conditions of Section 8 hereinafter.

**3.**     PHYSICAL MANAGEMENT

    3.1     Maintenance. Agent shall assist the Board of Directors in its responsibilities for the upkeep, maintenance and management of Common Areas and the equipment, pursuant to the Association's documents and within the scope of this agreement.

    3.2     Agent shall receive maintenance requests and/or complaints concerning Association's Common Areas, and communicate them to the Board of Directors, or if so directed by the Board, to the appropriate contractors and vendors for correction, repairs or maintenance.

    3.3     Agent shall provide a 24-hours per day, 7 days per week call center to assist or refer emergencies in the Common Areas of the Association. Serious matters will be reported to the Association's Board of Directors with appropriate recommendations for the purpose of receiving further instructions from the Board on how to proceed. Agent shall receive and/or assist calls after normal working hours. Agent shall be entitled to a fee for after-hours calls requiring an immediate response in excess of two (2) calls per month, in accordance with Exhibit A. Onsite visits necessitated, at discretion of Agent, by such calls, shall be charged at the hourly

Initial & Date

EXHIBIT _1_
PAGE _6_ OF _18_

rate noted for Manager's Extra Time, portal to portal.

3.4    Agent shall perform a minimum of once monthly general reviews of the Common Areas and facilities from ground level, and will submit findings, action taken and recommendations to the Board of Directors, to assist in preserving the aesthetics of the Common Areas. The Agent shall not be required to review the Common Areas during its walk-through's from any other perspective than from ground level. Agent is authorized to initiate routine repairs to the Common Areas and facilities, so long as such repairs and maintenance are in compliance with the Board's adopted management plan for the Association, or Section 2.4 herein.

3.5    Bids for Hiring, Supervising and Discharging Third Party Contractors.

a)    Agent shall, upon receipt of instructions or upon resolution of the Board of Directors, request bids from insured vendors of Agent's and Board's selection, with a minimum of two (2) and a maximum of three (3) bids for the types of third party goods or services that Agent believes, in his sole discretion, are likely to cost $5,500.00 or more. Those items for which the Board requests bids that are in the Agent's sole discretion likely to less than $5,500.00 will not be let out for bid, and Agent shall be under no duty to solicit bids for those items. Should the Board wish for Agent to solicit bids for an item costing less than $5,500.00, Agent shall be entitled to an hourly fee in accordance with Section 9.1 of this agreement. Specifications for all items shall be included with the Board's request, and the Board shall be solely responsible for establishing the standards, specifications or criteria for work to be let out for bid. Agent will endeavor to make helpful suggestions; however, the final decision in establishing standards, specifications and criteria shall be the Association Board's.

b)    Agent shall, upon receipt of the Board's written instructions or resolution, discharge contractors that the Board decides are not performing up to the standards, specifications or criteria established by the Board of Directors. Agent, on the basis of an operation schedule, job standards and compensation rates approved by the Association shall investigate, secure and pay third parties in order to maintain and operate the Association. Any contract for such third party contractors will be a direct contract between the Association and the third party contractor, and Agent shall act solely as the Agent of the Association in negotiations and maintenance of said contract, and not as a contracting party. Compensation for the services of all third party contractors shall be paid by the Association. Agent shall have no authority to sign any contract on behalf of Association unless the Board of Directors has granted such authorization to Agent in writing.

3.6    Agent is authorized to install a key lockbox in a location mutually agreed upon

UKE 11-14-10
Initial & Date
ana 11/14/10

EXHIBIT  1
PAGE  7  OF  18

between Association and Agent.

## 4.    ADMINISTRATIVE MANAGEMENT AND CONSULTING

4.1    Agent shall organize the records and documents it receives from the Association or their prior manager or management company in accordance with its normal procedures. Within sixty (60) days from receipt of complete records, Agent shall render financial statements in their usual form showing the financial status of Association, or, if the records are inadequate to prepare such financial statements, Agent shall submit a written recommendation to Association. If such recommendation suggests a review or audit by a third party, or additional investigation and organization of information that will permit the publication of financial statements, Agent shall provide estimated cost of performing such services.

4.2    Agent shall write letters and communicate as necessary to assist the Board in carrying out its responsibilities, and will receive and write letters to unit owners and others concerning violations of Association documents and rules, unit owner's requests, architectural and maintenance matters, etc.

4.3    Agent shall counsel and advise Board of Directors and its committees in their day-to-day operations.

4.4    Agent shall assist in interpretation of the rules of the Association and suggest alternative steps of enforcement.

4.5    Agent shall provide, at Association's sole cost and expense, material and expertise in the development of methods of communication to the unit owners (rules and regulations, etc.), as necessary.

4.6    Meeting Notices. At the request of the Board, and at the Association's sole cost and expense, Agent shall send notices of Association meetings, prepare the Agenda for said meeting, circulate minutes of any such meetings as prepared by the Secretary, and effect instructions as approved by the Board of Directors.

4.7    At the Association's sole cost and expense, Agent shall assist in preparation for Association Annual Membership Meeting, including notices, proxies and agenda, if so requested by the Board of Directors.

4.8    Agent shall not be responsible to record and/or type minutes of regular meetings of the Board of Directors or the Annual Meeting of the Association. Upon request by the Board of Directors, Agent shall coordinate a third party to serve as recording secretary, the costs for which shall be borne by the Association.

4.9    Association Records. Agent shall maintain possession of all records, with the

CMELLU-10
Initial & Date

 are 8/14/00

EXHIBIT 1
PAGE 8 OF 18

exception of correspondences, of the affairs of the Association throughout the term of this Agreement. Agent shall ——ntain possession of correspondences for a l——ed period of six years from the date received by Agent.  While Agent shall put forth every effort to maintain Association records in good order, Agent makes no representation or warranty as to the accuracy and/or completeness of such records. Accuracy and/or completeness of the Association records remain the responsibility of the Association.

4.10    Review of Records. During the term of this Agreement, Agent shall make available for review by the Board all records in Agent's possession that pertain to the Condominium, with the exception of correspondences.  Correspondences pertaining to the Condominium shall only be held by Agent for a period of six years from the date received by Agent, after which time such correspondences shall not be retained by Agent. Association agrees that Agent shall charge a fee in accordance with Exhibit A for records research and for the scheduling and monitoring of such a review.

4.11    Special Mailings and newsletters requested by the Board, as prepared by the Association and Agent, shall be prepared, duplicated and mailed at the expense of the Association. All requests for duplication of additional copies of project documents, correspondence, reports, etc., will be at the expense of the Association.

4.12    Agent shall not be responsible for any contractor, subcontractor or Association employee's work performance or adherence to specifications or schedules.

4.13    Agent shall attend one Home Owner Association meeting per year. Agent shall attend one board meeting per quarter (every three months) a total of 4 meetings a year. Meeting selection shall be at the direction of the Association.

5.    TERMINATION OF AGREEMENT

5.1    Termination. Either party may terminate this agreement by providing sixty (60) days written notice to the other. This termination provision may be invoked with or without cause. Upon such notice of termination, both parties agree that this Agreement shall remain in full force and effect for the entire sixty (60) days.

5.2    Arbitration Provision. In the event of a dispute over the performance and/or non-performance by - either party in this agreement, the alleging party shall offer arbitration to the offending party prior to initiating legal action to gain compliance with the terms and conditions set forth by this agreement.

Prior to requesting arbitration, the alleging party must provide the offending party written notice of the dispute. Such notice shall allow for a reasonable time, not to exceed thirty (30) days, for the offending party to comply with this Agreement. After the expiration of said thirty days, the alleging party can proceed to binding arbitration. Upon acceptance of a written demand

Initial & Date

EXHIBIT 1
PAGE 9 OF 18

for arbitration, the dispute shall be submitted to arbitration with a single arbitrator mutually selected by the parties fr——a list of five arbitrators submitted by the A——ican Arbitration Association. The determination of the arbitrator shall be binding upon both parties. The arbitration shall be conducted pursuant to the rules of the American Arbitration Association and shall be submitted within 120 days of submission. Upon making a written demand for arbitration, the dispute shall be submitted promptly to an arbitrator mutually selected by the parties and the determination of the arbitrator shall be binding upon both parties. If the arbitrator shall determine that offending party has committed a material breach of this Agreement, then such finding shall furnish the aggrieved party with the right to terminate the contract 30 days after the final decision of the arbitrator. In the event that the parties cannot mutually select a single arbitrator, the arbitrator will be selected by the American Arbitration Association from the remaining names.

5.3     Termination Fee. Each party shall be responsible for any costs they incur in the termination of this agreement. Agent will be paid a termination fee of not more than $35 and be reimbursed for all duplication costs and transition materials including boxes, files, postage and any delivery costs.

5.4     Condemnation. Upon taking of the entire or a substantial portion of the Project through lawful condemnation proceedings by any governmental party, either party may terminate this agreement by serving 30 days written notice by certified mail to the other party.

## 6.     RECORD RETENTION

6.1     The Association's current records shall be kept at the Agent's office. Such records shall be available for inspection and copying during Agent's normal business hours in accordance with Oregon state laws and the Governing Documents, Monday through Friday. Agent shall be entitled to charge and receive copying and document research costs, as set forth in Exhibit A, from anyone requesting copies of records or documents, before making such copies. Agent shall be entitled to reasonable notice prior to such inspection or copying of records.

6.2     Unit Owners Lists. Agent shall maintain a current list of unit owners in the Association in accordance with the information supplied to Agent. Reasonable efforts will be made to keep this list accurate, but it shall be the responsibility of the Association to advise Agent of address or ownership changes of which it becomes aware. Agent shall not be obligated to search official records or other record sources for such transfers of ownership unless specifically requested to do so by the Board at hourly rates set forth in this agreement. Agent will record changes of address of ownership upon advice from owners, with supporting documentation.

6.3     Correspondence. Agent shall maintain documents and complete files for all current correspondences relating to Association, such as incoming unit owner correspondence, violation and architectural control letters, contracts, purchase orders, filing with public agencies, insurance policies and information and other related documents.  Correspondences shall only be

*Initial & Date*

EXHIBIT ___1___
PAGE _10_ OF _18_

retained by the Agent for six (6) years from the date received, after which such correspondences may be disposed of by ⎯⎯⎯nt. Agent shall only retain electronic copie⎯⎯ correspondences.

6.4    All records and correspondence regarding Association are and will remain the sole property of Association. Agent agrees to return any and all such records and correspondence to the Association, or to an entity or person designated in writing by the Board of Directors upon termination of this Agreement. Such records shall be available for pick up at Agent's office or such other designated location as may be agreed upon. Electronic media, such as computer tape, discs, and general electronically stored databases are the sole property of the Agent. However, Agent shall provide Association with a hard copy of all such records, as requested, at the sole cost and expense of the Association per Exhibit A.

6.5    Agent agrees to maintain storage of Association records and correspondence at the sole cost and expense of the Association per Exhibit A.

## 7.    INSURANCE AND INDEMNIFICATION

AGENT'S INSURANCE

7.1    Agent shall, throughout the term of this Agreement, and at Agent's expense, maintain the following insurance coverage:

a)    Fidelity bond or employee dishonesty insurance will be provided for all Agent's employees, when applicable, to protect Association funds.

b)    Agent's liability insurance and comprehensive general liability coverage, including automobile liability, completed operations, blanket contractual and personal injury coverage, with combined single limits of $1,000,000 property damage and liability.

c)    Workers Compensation Insurance in the statutory amount, covering any of Agents employees.

ASSOCIATION INSURANCE

7.2    Association shall maintain at its sole expense a policy of comprehensive general liability, Directors and Officers, worker's compensation and property insurance (as necessary) in accordance with the Governing Documents and applicable Oregon State codes.

7.3    Association shall name Agent as an additional named insured on the Association's policies of comprehensive general liability and said insurance policies shall cover Agent for any and all claims and losses indemnified by Association pursuant to Section 7.7. Agent shall be provided with insurance certificates identifying Agent as additional insured showing the amount

Initial & Date

of coverage to be furnished to the Agent.

7.4     In the mutual interest of Association and Agent, both parties agree that fidelity insurance coverage protecting Association funds shall be a Master Fidelity policy, so long as such coverage is available. The limits of the Master Fidelity policy shall be no less than the total amount of the Association's reserve funds plus three (3) months total assessment income.

7.5     In the event the Association fails to maintain agreed upon insurances, Agent may unilaterally terminate this Agreement immediately, and the provisions of Section 5.1 above shall not be applicable to Agent's action.

7.6     Agent shall maintain reasonable communication with Association's insurance agent and will assist the Board in reviewing and renewing insurance coverage, including solicitation of bids for such coverage. The Board of Directors is solely responsible for maintaining insurance coverage for the Association, and for adequacy of coverage.

INDEMNIFICATION
7.7     Association shall indemnify, defend, and hold harmless Agent and its employees, agents, officers and directors from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, judgments, orders and damages, including interest, penalties and attorney's fees, that Agent shall incur or suffer, which arise, result from or relate to the performance by Agent of its duties under this Agreement in good faith and in the ordinary course of business, except for the willful misconduct or gross negligence of Agent This includes, without limitation and, for example, a situation in which Agent is made a party to litigation, arbitration or other proceeding brought by a unit owner, a Member, a contract vendor of the Association, or an outside party by reason of Agent's position as Agent or its activities hereunder. This provision shall survive any termination of this Agreement.

7.8     Agent shall only be responsible for the willful misconduct or gross negligence where such liability is due to the sole conduct of Agent and/or its employees in its performance of its duties under this Agreement.

## 8.    COMPENSATION - ENHANCED MANAGEMENT SERVICE

In consideration of Agent's acceptance of its appointment hereunder and the performance of services as set forth herein, the compensation to which the Agent shall be entitled will consist of fees for basic services (Base Fee) which are considered due upon execution of this Agreement, but are paid monthly, along with those fees and costs for special or extraordinary services as set forth in Exhibit A.

a)     Agent shall be paid in advance on the first day of each month without prior

WE 11-4-10<br/>
Initial & Date<br/>
Anu 11/19/10

EXHIBIT ___1___<br/>
PAGE _12_ OF _18_

Association approval. The total monthly base fee is $522.00, based on a total of 29 **units**——otal monthly base fee will remain at $522.0——r a period of 1 year from date of contract signing, as long as contract remain in effect and is not cancelled by either party.

b)     The base fee, as defined, shall be net to Agent and is exclusive of the Association's operating expenses and costs. The base fee shall be superseded by the adoption of a new annual association budget indicating an adjusted base fee for management services. Adoption of the annual budget by the Association's Board of Directors shall constitute an approval of a base fee change under this Agreement, but in no event shall the base fee be less than the amount stated in paragraph (a) of this section.

c)     Agent and Association agree that the base fee for services identified in paragraph (a) above, is based upon **6** hours per month being necessary to fulfill Agent's duties defined by this Agreement. Hours are proportionate to number of units, which have closed escrow through completion of Declarant sales program. Association and Agent agree that if monthly time is in excess of these hours in the aggregate, the provisions of Section 9.1 may apply. Agent shall notify Association before going beyond specified hours, and will receive authorization in writing or email prior to exceeding prescribed hours, except as outlined in Paragraph 8(d) below.

d)     In the event that an emergency occurs, and Agent reasonably believes that responding to the emergency would cause Agent to exceed the prescribed hours, Agent will make all reasonable efforts, given the circumstances, to notify Association and receive authorization to proceed.  However, Association's lack of timely response shall not prevent Agent from responding to protect Association in a reasonable manner.

8.1     Agent's Fees and Costs. Any base fees and costs due the Agent will be paid promptly each month on the first of each month. Any monies due and billed and not paid to Agent by the fifteenth (15th) of each month will carry a 1.5% per month late fee which will be added to the balance due and will be subject to further late charges until paid. Interest at the maximum legal rate to be charged thirty (30) days after any amounts are delinquent.

8.2     Reimbursable Administrative Operating Expenses. The Association shall reimburse Agent for all postage costs incurred by Agent on Association's behalf. In addition, Association will reimburse Agent for all reasonable expenses incurred on behalf of the Association including, but not limited to, those expenses listed in Exhibit A attached hereto, as may be amended from time to time, and included herein. Said costs will be reimbursed on a monthly basis as incurred and billed.

Initial & Date

EXHIBIT      1
PAGE  13  OF  18

8.3    Deductio——Agent's Compensation. Association shall ——bligated to pay, and Agent shall receive as compensation for its services under this Agreement the sum provided for in this section herein and above at the times therein set forth. Agent is entitled to deduct such compensation when due from the funds then in its possession. Agent's compensation covers normal and usual administration expenses of Agent required by actions of the Board of Directors.

## 9.    SPECIAL OR EXTRAORDINARY SERVICES

9.1    Association shall pay Agent compensation in accordance with Exhibit A for services performed on behalf of Association outside the normal course of operation or outside the parameters of this agreement. These items shall include, but not be limited to, hours spent in oversight or management of work directly related to construction defect claims and/or time specifically expended in oversight or management of major reconstruction project(s).

9.2    Agent may be required to perform additional services beyond the scope of these services, for which the above fees, or the current rates that are then applicable, will be charged by the work performed. Examples of such services are, but not limited to:

a)    Assistance in adhering to requirements of laws and regulations, which may be passed during the term of the Agreement that requires Agent participation.

b)    Agent shall be paid per hour, at the Manager's rate as shown in Exhibit A, portal to portal, for work performed by Agent on behalf of Association, including but not limited to, appearance at court, at hearings, depositions, claims negotiations and processing of insurance losses or reconstruction, performing committee functions, such as monitoring, reporting and updating of any architectural progress, development status reports, bank loans, investments, maintenance, construction defect matters, financial reconstruction, discovery on Association's acts prior to the original commencement date of this Agreement.

Agent shall only be paid for the services identified above if performing said services cannot be accomplished, along with Agent's other duties defined herein, within the hours prescribed by Section 8, paragraph (c) of this Agreement.

c)    If requested by Board to attend meeting, Agent shall be paid per hour, at the Manager's rate, for attendance at Board or annual meetings, minimum of one (1) hour, and in half-hour increments thereafter. Portal-to-portal time will apply if meeting location is greater than 20 miles from Agent's main office.

Initial & Date

EXHIBIT _1_

PAGE _14_ OF _18_

10.     ASSOCI̶̶̶̶ION SET-UP FEE

    10.1    Agent shall be paid a one-time, non-refundable fee of **$10.00** per unit a total of **$290.00**, payable with the first month's fee, at the commencement of this Agreement to offset the costs of setting up the Association's records. Not included in such set-up fee are bank charges or Board authorized independent accountant fees, which may also be incurred.

**11.     TERM OF CONTRACT**

    11.1    Commencement Date. After execution of this contract by the Association's Board of Directors, Agent's compensation shall commence upon the day indicated in the following paragraph.

    11.2    This Agreement shall commence upon first close and shall continue in full force and effect for twelve months, and thereafter from year to year. This Agreement shall automatically renew for a like term at each anniversary of the commencement date, subject to the termination provisions contained in this Agreement.

**12.     AGENT AND ASSOCIATION PROTECTION**

    12.1    Agent Employees. Agent spends significant amounts of time and money to hire and train employees for the operation of this and other Associations. Association derives and benefits from Agent's experience in managing, and their hiring and training procedures. Association agrees it will not hire, retain, or contract with any employee, partner, officer, or co-owner of agent or its parent company or divisions in any capacity whatsoever for a period of six (6) months following the termination of this Agreement or any extension thereof. Association agrees to pay Agent the sum of Ten Thousand Dollars ($10,000.00) as liquidated damages if it breaches this provision of the Agreement. Both parties agree that this is a reasonable sum due to the extensive training and trade secrets that Agent provides, as well as expectation of continued income and allotment of resources, and further with respect to the difficulty in establishing the amount of actual damages.

    12.2    Association shall have access to and be dealing with trade secrets of Agent, such as: confidential information pertaining to client lists; procedures, processes and documentation relating to management of Agent's client Associations; and programs, software, procedures and techniques relating to data processing and financial reporting. Association agrees to hold any such trade secrets or confidential information, attained during the course of this Agreement, in the strictest confidence, and shall retain a total confidentiality, giving value to protecting them from Agent's competitors. This provision shall survive termination of this Agreement.

    12.3    All materials of a confidential nature, prepared and utilized in Agent's

*UNE 11-14-10*
Initial & Date

*Ock 11/9/10*

EXHIBIT 1
PAGE 15 OF 18

performance of their duties under this Agreement, shall remain the exclusive property of Agent, and shall be retained in _____nt's possession.

### 13.    MISCELLANEOUS

13.1    Advances and Charges. Agent shall not be required to, perform any act or duty hereunder involving the expenditure of money unless Agent shall have in its possession sufficient funds of the Association available. Therefore, if at any time the funds in the possession of Agent are not sufficient to pay the charges incident to this Agreement, Agent, shall not be responsible to advance its own funds for any reason, and the Association agrees, in such cases, that upon notice thereof by Agent, the Association shall make immediate arrangements to make funds available to cover the insufficiency.

13.2    Agent shall receive communications and directions from any Association director, and shall act with the assumption that said director is acting on behalf of the entire Board. However, should a conflict arise between directors, Agent shall consider the President as the representative of the Association with authority to act on behalf of Association. Should the President be unavailable to resolve such a conflict, then the Secretary shall serve in this capacity. Agent may, but is not required to, submit any matter, direction, instruction or the like to the Board of Directors and shall then follow the direction of the Board of Directors.

The Association Board of Directors understands its fiduciary duties, and agrees to govern the Association in a business like manner, acting in good faith and in the best interest of the Association and will work to adopt a business management plan for the future of the Association.

13.3    Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Association. This Agency agreement shall be binding on the parties hereto, their heirs, executors, administrators, successors and assignees, and constitutes the full agreement except that subsequent changes or additional provisions must be in writing and executed by both parties.

Notwithstanding the preceding sentence, the Agent shall not assign its interest under this Agreement except in connection with the sale of all or substantially all of the assets of its management business. In the event of such a sale, Agent shall be released from all liability by the Association.

13.4    Association and Agent acknowledge that they have carefully read and reviewed this agreement and each term and provision contained herein including any addendums or additions such as "Summary of Fees – Exhibit A" and by execution of this Agreement show their informed and voluntary consent thereto. The parties hereby agree that, at the time this Agreement is executed, the terms of this Agreement are commercially reasonable and effectuate the intent and purposes of the Association and Agent with respect to the service agreement.

Initial & Date

EXHIBIT  1
PAGE  16  OF  18

14.    DISCLAIMER

No representation or recommendation is made by the Agent or its employees as to the legal sufficiency, legal effect, or other consequences of this Agreement. The parties shall rely solely upon the advice of their own legal counsel as to the legal and other consequences of this Agreement.

By affixing signatures below, both Association and Management Agent agree to the terms, conditions and provisions specified by this Agreement.

~~AGENT:~~ *Association:*

ASSOCIATION

By: *[signature]*                                    By: *[signature]*

*Matthew Weidner*                                   *Lisa Ann Engel*

Title: *President*                                   Title: *TREASURER*

Date: *11/14/10*                                     Date: *11-14-10*

*Agent:*

*[signature]*

*Greg Leed*

*Senior Account Manager*

*11/14/2010*

_____
Initial & Date

EXHIBIT ___1___
PAGE _17_ OF _18_

| | |
|---|---|
| Replacement of Common Area Access Cards and/or Keys | $15.00 |
| New Home Owner S——p Fee (New Buyer) | $65.00 |
| Mortgage Application Fee (Includes condo cert, budget, financial statements & 12 months of minutes) - *In the event the transaction does not close the fee will not be collected.* | $65.00 |
| Escrow Administration - *In the event the transaction does not close we will not collect the fee.* | $65.00 |
| Additional or Replacement Copies of Director's Manual (Email Copies or Copies Via the Association's Website are Free) | $25 + Postage |
| After Hours Emergency Calls (If issue is not HOA Related) | $35.00 |
| After Hours Emergency Onsite Presence (If issues is not HOA related) | $75 Per Hour |

*Any other services or activities will be charged at cost of materials plus $75 per hour*
**Costs of the above services may be subject to change

LAE 11-14-00

INITIAL & DATE

Professional Community Management, Inc.
www.pcnmw.com ● 503-276-3231 ● PO Box 28205  Portland  OR  97228

EXHIBIT 1
PAGE 18 OF 18

**Crane, Jim**

| | |
|---|---|
| **From:** | Cohen, Stuart |
| **Sent:** | Wednesday, November 07, 2012 8:34 AM |
| **To:** | Crane, Jim |
| **Subject:** | FW: HOA Funds |

Admission e-mail.  Greg Lloyd is one of the owners of NW Empire

**From:** decaturbridgewaterboard@nwempire.com [mailto:decaturbridgewaterboard@nwempire.com] **On Behalf Of**
Gregory Lloyd
**Sent:** Wednesday, June 06, 2012 4:44 PM
**To:** Decatur Bridgewater Board
**Subject:** HOA Funds

Hello Decatur Board,

On Monday 06/04/2012 it was discovered that your HOA's funds have been inappropriately allocated. We have held all expenditures on your account at this time while a forensic accountant reviews your account. At this time you may want to work with your account manager at NW Empire to file a claim under your Fidelity Bond/Employee Dishonesty for the full amount in your reserves and operating accounts. The final number can be changed once it is known. We will need to set up a time next week with your board to open new accounts which only have board member signing ability on them.

We will be having a meeting Monday morning at 7:30AM at the NW Empire office located at 3330 NW Yeon Ave Suite 200, Portland, OR 97210 to discuss this situation with myself, our forensic CPA and fraud attorney. We will provide coffee, donuts, bagels, etc. for you.  Please plan on attending this meeting.

If you would like to speak to John Brams (the forensic CPA) to discuss progress, please feel free to contact him at (503) 297-6466.

Kind Regards,

Gregory Lloyd
*Senior Community Manager*

503-482-6812 | *direct*
503-278-3231 | *office*
503-200-1114 | *fax*

PO Box 28205 | Portland, OR | 97228

EXHIBIT 2
PAGE / OF /

1

1

2

3    IN THE CIRCUIT COURT FOR THE STATE OF OREGON    12 NOV 13 PM 3: 14
                                                     FILED
4    FOR THE COUNTY OF MULTNOMAH

5    **CEDAR LAKE HOMEOWNERS
     ASSOCIATION**, an Oregon domestic
6    nonprofit corporation; and **DECATUR
     BRIDGEWATER VISTA**                Case No. *1211-14420*
7    **CONDOMINIUMS OWNERS'
     ASSOCIATION**, an Oregon domestic   **PLAINTIFFS' PETITION FOR**
8    nonprofit corporation,              **ISSUANCE OF PROVISIONAL PROCESS
                                         – WRIT OF GARNISHMENT, WRIT OF**
9            Plaintiffs,                 **ATTACHMENT, AND RESTRAINING
                                         ORDER AND ORDER TO SHOW CAUSE**
10           v.
                                         **ORCP 83; ORCP 84**
11   **NORTHWEST EMPIRE
     COMMUNITY MANAGEMENT, INC.**,
12   fka Professional Community Management,
     Inc., an Oregon corporation,
13
             Defendant.
14

15   State of Oregon          )
                              ) ss.
16   County of Multnomah       )

17       STUART K. COHEN, being duly sworn, states as follows:

18       1.    I am a partner at Landye Bennett Blumstein LLP, counsel for Plaintiffs in this case.

19   This sworn petition is based on information known to me.

20       2.    As shown below and in the accompanying declarations of Neill Fishman and Robert

21   S. Watson, this case arises from the loss of Plaintiffs' monies entrusted to their community

22   manager, defendant Northwest Empire Community Management, Inc. ("Northwest Empire"),

23   after Defendant wrongfully comingled the funds with funds from other owners' associations and

24   then wrongfully disbursed Plaintiffs' funds for purposes not authorized by Plaintiffs.

25   Contemporaneously with this Petition, Plaintiffs have filed a complaint against Defendant

26   alleging claims for breach of contract, negligence, conversion, breach of fiduciary duty,

ENTERED
NOV 1 4 2012
IN REGISTER BY EG

Page 1 -   PETITION FOR PROVISIONAL PROCESS
LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)                    *687016.14501-002*

1  accounting, and unlawful trade practices. A copy of the complaint as filed is Exhibit 1 to this

2  Petition.

3       3.    As explained below and in the accompanying declarations of Robert S. Watson and

4  Neill Fishman, this Petition seeks provisional process in the nature of Writ of Attachment and/or

5  Writ of Garnishment to secure insurance proceeds available to Defendant to satisfy any judgment

6  that may be recovered by Cedar Lake Homeowners Association for its claim of $60,776.52 for

7  missing funds and by Decatur Bridgewater Vista Condominium Owners Association for its claim

8  of $72,099.18 for missing funds.

9       4.    I have obtained from Defendant's insurance agent, American Benefits, Inc., copies of

10  Defendant's insurance policies issued by The Hartford that may provide coverage for Plaintiffs'

11  claims against Defendant. True copies of the policy change reflecting Defendant's name change,

12  showing policy no. 52 SBA ZV5572 SC in effect from 11/01/10 to 11/01/11, excerpts from the

13  declarations page for policy 52 SBA PV0811 SC in effect from 11/17/11 to 11/17/12, and

14  excerpts from the declarations pages in effect from 02/10/12 to 02/10/13 are attached as

15  Exhibit 5.

16      5.    Further, Plaintiffs seek a restraining order pursuant to ORCP 83 E directed to

17  Defendant and to each other person in possession or control of $132,875.70 of the insurance

18  proceeds restraining Defendant and each such other person from transferring, removing or

19  otherwise disposing of said insurance proceeds pending the hearing on Plaintiff's petition for

20  provision process, and requiring Defendant and each such other person to appear at a time and

21  place fixed by the Court and show cause why such restraint should not continue during pendency

22  of this lawsuit on the underlying claims in the complaint.

23      6.    ORCP 83 A(1):  The name and place of business of Defendant are:  Northwest

24  Empire Community Management, Inc., 3000 NE Sandy Blvd., Portland, Oregon 97232 and P.O.

25  Box 28205, Portland Oregon 97228; email – Gregory@pcmnw.com.

26      7.    ORCP 83 A(2):  The underlying claim is not based on a consumer transaction and

Page 2 -   PETITION FOR PROVISIONAL PROCESS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

687016.14501-002

1  provisional process in a consumer good is not sought.

2      8.    ORCP 83 A(3)(a):  The provisional process sought is not claim and delivery.

3      9.    ORCP  83 A(3)(b):   The provisional process sought includes a restraining order
4  pursuant to ORCP 83 E.  A statement of the particular acts sought to be restrained is as follows:
5  Defendant and each person in possession or control of the insurance proceeds payable to
6  Defendant on account of a claim or claims filed by Defendant for losses incurred as a result of
7  the wrongful comingling and disbursement of funds belonging to Plaintiffs shall not payout,
8  transfer, remove or otherwise dispose of the claimed insurance proceeds.

9      10.   ORCP 83 A(4):  Plaintiffs' claim to provisional process is not based upon ownership,
10  entitlement to possession, a security interest or otherwise.

11      11.   ORCP 83 A(5):  Plaintiffs do not have a writing or writings that purport to give
12  Plaintiffs a claim to provisional process.  Attached as Exhibit 1 to the Declaration of Robert S.
13  Watson and as Exhibit 1 to the Declaration of Neill Fishman are true copies of the plaintiffs'
14  respective Management Agreements with Defendant, which underlay Plaintiffs' claims against
15  Defendant.

16      12.   ORCP 83 A(6):  The claimed insurance proceeds are not wrongfully detained by the
17  Defendant or another defendant.

18      13.   ORCP 83 A(7):  The claimed insurance proceeds have not been taken by a public
19  authority for a tax, assessment or fine.

20      14.   ORCP 83 A(8):  Plaintiffs do not claim that Defendant has waived the right to be
21  heard.

22      15.   ORCP 83 A(9):  The following facts tend to establish that there is substantial danger
23  that the defendant or another person is engaging in, or is about to engage in, conduct which
24  would place the claimed property in danger of concealment, loss, or transfer to an innocent
25  purchaser.  Plaintiff is concerned that Defendant will expend these funds and leave Plaintiffs
26  without funds to cover their stolen funds – Defendant previously mismanaged or stole Plaintiffs'

Page 3 -   PETITION FOR PROVISIONAL PROCESS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687016.14501-002

1  funds and, if not restrained, history could repeat itself.

2      16.    ORCP 83 A(10):  Without restraint, Plaintiffs will suffer immediate and irreparable

3  injury, damage or loss because Defendant does not have other assets with which to pay

4  Plaintiffs' claims, as indicated by the fact that Defendant has not replaced the missing funds.

5      17.    ORCP 83 A(11):  The following facts tend to establish that there is substantial danger

6  that the defendant or another person probably would not comply with a restraining order.

7  Defendant and one of its principals previously mismanaged or stole Plaintiffs' funds and are not

8  to be trusted.

9      18.    ORCP 83 A(12):  There is no reasonable probability that Defendant can establish a

10  successful defense to the underlying claim for the following reasons:

11      Cedar Lake entered into a Management Agreement with Defendant, then known as

12  Pacific Community Management on or about June 9, 2011.  A true copy of the agreement is

13  Exhibit 1 to the Declaration of Robert S. Watson.[1]  Decatur Bridgewater entered into a

14  Management Agreement with Defendant on or about November 14, 2010.  A true copy of the

15  agreement is Exhibit 1 to the Declaration of Neill Fishman.[2]

16      Both agreements provide, identically, in Article II, § 2, for Defendant to provide

17  "Financial Management" services to the plaintiffs.  These services include, among others:  the

18  collection and deposit of all maintenance assessments on the owners in the associations (§2.1);

19  the establishment and maintenance of a separate checking account or accounts for deposit of the

20  association's operating funds (§2.1); the checking accounts were to be established in a manner

21  indicating their custodial nature (§2.2); the payment by Defendant from such account(s) for the

22  expenses of the operation of the association in accordance with the association's approved

23  budget or as otherwise authorized by the association's Board of Directors (§2.2); the

24  authorization of Defendant by each association to make all disbursements from the association's

25  _____

26      [1] Declaration of Robert S. Watson.
       [2] Declaration of Neill Fishman.

Page 4 -  PETITION FOR PROVISIONAL PROCESS

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503-224-4100
503-224-4133 (facsimile)

*687016.14501-002*

1  this Petition is a true copy of the summary page created by Mr. Brams for Decatur Bridgewater.

2  It shows a loss of $72,099.18. Defendant has not been able to replace the missing funds.

3       The agreements, Defendant's admissions about "inappropriately allocated" funds, and

4  Defendant's admissions about the amounts of missing funds, show that there is no reasonable

5  probability that the defendant can establish a successful defense to the underlying claims of

6  breach of contract, negligence, conversion, and breach of fiduciary duty.

7     19.   This is an action upon which a writ of attachment may be issued because it is an

8  action upon a contract, namely, the Management Agreement, when the contract is not secured by

9  a mortgage, lien or pledge. ORCP 84 A(2)(a). Attachment is sought for tangible personal

10  property, namely, cash or checks (ORCP 84 B(2)) or for a debt owed by Defendant's insurance

11  company on account of Defendant's insurance claim (ORCP 84 B(3)).

12     20.   Garnishment is sought upon bank accounts of the defendant wherein insurance

13  proceeds may be deposited.

14       DATED this 9th day of November, 2012.

15

16              By: _____

17                 Stuart K. Cohen, OSB #851738

18   SUBSCRIBED AND SWORN to before me this ____ day of November, 2012.

19

20        **OFFICIAL SEAL**
         **MICHELLE M VASSAR-MOORE**
         NOTARY PUBLIC-OREGON
21        COMMISSION NO. 456456    Notary Public for the State of Oregon
       MY COMMISSION EXPIRES MARCH 01, 2015

22

23

24

25

26

Page 6 -   PETITION FOR PROVISIONAL PROCESS

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

687016.14501-002

1

2

3          IN THE CIRCUIT COURT FOR THE STATE OF OREGON

4              FOR THE COUNTY OF MULTNOMAH

5    CEDAR LAKE HOMEOWNERS
     ASSOCIATION, an Oregon domestic
6    nonprofit corporation; and DECATUR
     BRIDGEWATER VISTA                          Case No.    1211-14420
7    CONDOMINIUMS OWNERS'
     ASSOCIATION, an Oregon domestic            COMPLAINT
8    nonprofit corporation,                     (Breach of Contract; Negligence;
                                                Conversion; Breach of Fiduciary Duty;
9                Plaintiffs,                     Accounting; Unlawful Trade Practices;
                                                Attorney Fees)
10        v.
                                                Not Subject to Mandatory Arbitration
11   NORTHWEST EMPIRE
     COMMUNITY MANAGEMENT, INC.,                Jury Trial Requested
12   fka Professional Community Management,
     Inc., an Oregon corporation,               Plaintiffs' Claim: $132,875.70
13                                              Statutory Filing Fee: Or Laws 2012, ch.
                Defendant.                      48, sec. 2: ORS 21.160(1)(c)
14

15        Plaintiffs  Cedar  Lakes  Homeowners  Association  ("Cedar  Lakes")  and  Decatur

16   Bridgewater  Vista  Condominiums  Owners'  Association  ("Decatur  Bridgewater")  allege  as

17   follows:

18                    FIRST CLAIM FOR RELIEF

19                  (Cedar Lake – Breach of Contract)

20                              1.

21        Cedar  Lakes  Homeowners  Association  is  a  nonprofit  corporation  organized  under  the

22   Oregon Nonprofit Corporation Act, Chapter 65 of the Oregon Revised Statutes.  Cedar Lakes is

23   located in Gresham, Oregon.

24                              2.

25        On or about June 9, 2011, Cedar Lake through its Board of Directors entered into that

26   certain Management Agreement with defendant Northwest Empire Community Management,

Page 1 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (Facsimile)

687015 13482-001
EXHIBIT    /
PAGE   /   OF  /6

1    Inc., then known as Professional Community Management, Inc. ("Defendant" or "Northwest

2    Empire"). The Management Agreement continued until effect until terminated by Cedar Lake in

3    or about June 2012.

4                                                        3.

5            Under the Management Agreement, Northwest Empire agreed to provide professional

6    services directed towards the management of the residential properties in Cedar Lake, including

7    professional services for financial management, among others.  The financial management

8    services included, among others, the collection and deposit of maintenance assessments from

9    Cedar Lake's owners; the creation and maintenance of a separate bank account to hold funds for

10   payment of Cedar Lake's operating expenses (an "operating account"); the creation and

11   maintenance of a separate bank account to hold Cedar Lake's reserve funds (a "reserve

12   account"); the distribution of funds from the operating and reserve accounts to pay liabilities

13   incurred on behalf of Cedar Lake; the maintenance of accounting records in accordance with

14   generally accepted accounting principles; the monthly distribution to all members of the Board

15   of Directors of a financial statement for the previous month, including copies of the balance

16   sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and

17   a check register of disbursements; and the utilization of all fraud control systems and methods

18   available to Northwest Empire for the protection of Cedar Lake's funds.

19                                                       4.

20           On or about June 6, 2012, Northwest Empire informed Cedar Lake that Cedar Lake's

21   funds had been "inappropriately misappropriated."  Subsequently, Northwest Empire informed

22   Cedar Lake that funds received by Northwest Empire for Cedar Lake had been conmingled with

23   funds received by Northwest Empire for other homeowners associations, and that funds had been

24   disbursed for purposes other than to pay liabilities incurred on behalf of Cedar Lake.

25                                                       5.

26           Northwest Empire breached the Management Agreement with Cedar Lake in one or more

Page 2 -   COMPLAINT

687015.13482-001
EXHIBIT  1
PAGE  2 OF 16

1  of the following ways:

2      a.    Failing to establish and maintain a separate custodial bank account for

3               Cedar Lake's operating funds;

4      b.    Failing to establish and maintain a separate custodial bank account for

5               Cedar Lake's reserve funds;

6      c.    By conmingling funds received for Cedar Lake with funds received from

7               other homeowners associations;

8      d.    By disbursing Cedar Lake's funds for purposes other than to pay liabilities

9               incurred on behalf of Cedar Lake;

10     e.    By disbursing funds from Cedar Lake's reserve funds without the prior

11              approval in writing of, or via email by two members of Cedar Lake's

12              Board of Directors;

13     f.    Failing to maintain a set of accounting records in accordance with

14              generally accepted accounting principles;

15     g.    Failing to distribute monthly to all members of the Board of Directors a

16              financial statement for the previous month, including copies of an accurate

17              balance sheet, statement of income and expenses, schedules of cash

18              investments, reserve allocations, and check register of disbursements; and

19     h.    Failing to utilize all fraud control systems and methods available to

20              Northwest Empire for the protection of Cedar Lake's funds.

21                          6.

22  As a result of Northwest Empire's breach of the Management Agreement, Cedar Lake

23  has incurred damages in the amount of $60,776.52 for lost operating and reserve funds.

24                          7.

25  Northwest Empire has failed and refused to return the operating funds and reserve funds

26  to Cedar Lake.

Page 3 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

687015.13482-001
EXHIBIT  1
PAGE  3  OF  16

8.

Cedar Lake is entitled to attorney fees and costs pursuant to Article II, section E of the Management Agreement, and to prejudgment interest from the date of each misappropriation.

## SECOND CLAIM FOR RELIEF

(Cedar Lake – Negligence)

9.

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, and 4, above.

10.

As Managing Agent, Northwest Empire owed Cedar Lake a duty to use reasonable care when performing financial management services for Cedar Lake.

11.

Northwest Empire negligently performed financial management services for Cedar Lake in one or more of the following ways:

    a.   Failing to establish and maintain a separate custodial bank account for Cedar Lake's operating funds;

    b.   Failing to establish and maintain a separate custodial bank account for Cedar Lake's reserve funds;

    c.   By conmingling funds received for Cedar Lake with funds received from other homeowners associations;

    d.   By disbursing Cedar Lake's funds for purposes other than to pay liabilities incurred on behalf of Cedar Lake;

    e.   By disbursing funds from Cedar Lake's reserve funds without the prior approval in writing of, or via email by two members of Cedar Lake's Board of Directors;

    f.   Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

Page 4 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687015 13482-001

EXHIBIT _1_
PAGE _4_ OF _116_

g.   Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

h.   Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Cedar Lake's funds.

12.

Northwest Empire's negligence was a substantial factor in causing Cedar Lake to suffer damages in the amount of $60,776.52 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

## THIRD CLAIM FOR RELIEF

(Cedar Lake – Conversion)

13.

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, and 4 above.

14.

Northwest Empire converted Cedar Lake's operating funds and reserve funds by taking them for its own purposes.

15.

As a result of Northwest Empire's breach of the Management Agreement, Cedar Lake has incurred damages in the amount of $60,776.52, consisting of the loss of operating funds in the amount of $60,776.52 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

16.

Northwest Empire has failed and refused to return the converted funds.

/////

/////

Page 5 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100

687013 13482-001

EXHIBIT _1_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## FOURTH CLAIM FOR RELIEF

(Cedar Lake – Breach of Fiduciary Duty)

17.

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, 3, and 4, above.

18.

Cedar Lake entrusted Northwest Empire with its reserve and operating funds. This entrustment created a fiduciary duty owed by Northwest Empire to Cedar Lake.

19.

Northwest Empire breached its fiduciary duty of loyalty and care to Cedar Lake in one or more of the ways alleged in paragraphs 5, 10, and 13, above, which are incorporated and realleged by reference.

20.

Northwest Empire's breach of its fiduciary obligations was a substantial factor in Cedar Lake incurring damages in the amount of $60,776.52 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

## FIFTH CLAIM FOR RELIEF

(Cedar Lake – Accounting)

21.

Cedar Lake incorporates by reference and realleges paragraphs 1-4 and 17-19 above.

22.

Cedar Lake is entitled to an accounting for all funds entrusted to Northwest Empire and to a judgment for all sums shown by the accounting to be owed by Northwest Empire.

23.

Cedar Lake is entitled to its attorney fees pursuant to Article II, section E of the Management Agreement.

/////

Page 6 -    COMPLAINT

687015.13482-001

EXHIBIT    1

SIXTH CLAIM FOR RELIEF

(Cedar Lake – Unlawful Trade Practices)

24.

Cedar Lake incorporates by reference and realleges paragraphs 1-4, above.

25.

Northwest Empire provided services to Cedar Lake for household purposes of Cedar Lake's members.

26.

Northwest Empire engaged in unlawful trade practices within the meaning of ORS 646.607 and ORS 646.608 in one or more of the following ways:

    a.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's operating funds;

    b.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's reserve funds;

    c.    By conmingling funds received for Cedar Lake with funds received from other homeowners associations;

    d.    By disbursing Cedar Lake's funds for purposes other than to pay liabilities incurred on behalf of Cedar Lake;

    e.    By disbursing funds from Cedar Lake's reserve funds without the prior approval in writing of, or via email by two members of Cedar Lake's Board of Directors;

    f.    Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

    g.    Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash

Page 7 -    COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (Facsimile)

687015 13482-001

EXHIBIT _____1_____

PAGE    7    OF    16

1    investments, reserve allocations, and check register of disbursements; and

2    h.    Failing to utilize all fraud control systems and methods available to

3    Northwest Empire for the protection of Cedar Lake's funds.

4    27.

5    Northwest Empire willfully used or employed said unlawful trade practices.

6    28.

7    As a result of the unlawful trade practices committed by Northwest Empire, Cedar Lake

8    has incurred damages in the amount of $60,776.52 for lost operating and reserve funds. Cedar

9    Lake is also entitled to punitive damages under ORS 646.638(1).

10    29.

11    Cedar Lake is entitled to reasonable attorney fees and costs under ORS 646.638(3).

12    Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

13    SEVENTH CLAIM FOR RELIEF

14    (Decatur Bridgewater – Breach of Contract)

15    30.

16    Decatur Bridgewater Vista Condominiums Owners' Association is a nonprofit

17    corporation organized under the Oregon Nonprofit Corporation Act, Chapter 65 of the Oregon

18    Revised Statutes. Decatur Bridgewater is located in Portland, Oregon.

19    31.

20    On or about November 14, 2010, Decatur Bridgewater through its Board of Directors

21    entered into that certain Management Agreement with defendant Northwest Empire Community

22    Management, Inc., then known as Professional Community Management, Inc. ("Defendant" or

23    "Northwest Empire"). The Management Agreement continued until effect until terminated in or

24    about June 2012.

25    32.

26    Under the Management Agreement, Northwest Empire agreed to provide professional

Page 8 -    COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503-224-4100

687015 13482-001

EXHIBIT _____1_____

PAGE _____8_____ OF __16__

1  services directed towards the management of the residential properties in Decatur Bridgewater,

2  including professional services for financial management, among others. The financial

3  management services included, among others, the collection and deposit of maintenance

4  assessments from Decatur Bridgewater's owners; the creation and maintenance of a separate

5  bank account to hold funds for payment of Decatur Bridgewater's operating expenses (an

6  "operating account"); the creation and maintenance of a separate bank account to hold Decatur

7  Bridgewater's reserve funds (a "reserve account"); the distribution of funds from the operating

8  and reserve accounts to pay liabilities incurred on behalf of Decatur Bridgewater; the

9  maintenance of accounting records in accordance with generally accepted accounting principles;

10  the monthly distribution to all members of the Board of Directors of a financial statement for the

11  previous month, including copies of the balance sheet, statement of income and expenses,

12  schedules of cash investments, reserve allocations, and a check register of disbursements; and the

13  utilization of all fraud control systems and methods available to Northwest Empire for the

14  protection of Decatur Bridgewater's funds.

15                          33.

16      On or about June 6, 2012, Northwest Empire informed Decatur Bridgewater that Decatur

17  Bridgewater's funds had been "inappropriately misappropriated." Subsequently, Northwest

18  Empire informed Decatur Bridgewater that funds received by Northwest Empire for Decatur

19  Bridgewater had been conmingled with funds received by Northwest Empire for other

20  homeowners associations, and that funds had been disbursed for purposes other than to pay

21  liabilities incurred on behalf of Decatur Bridgewater.

22                          34.

23      Northwest Empire breached the Management Agreement with Decatur Bridgewater in

24  one or more of the following ways:

25          a.      Failing to establish and maintain a separate custodial bank account for

26                  Decatur Bridgewater's operating funds;

Page 9 -   COMPLAINT

687015.13482-001

EXHIBIT ___1___

PAGE _9_ OF _16_

b.    Failing to establish and maintain a separate custodial bank account for Decatur Bridgewater's reserve funds;

c.    By conmingling funds received for Decatur Bridgewater with funds received from other homeowners associations;

d.    By disbursing Decatur Bridgewater's funds for purposes other than to pay liabilities incurred on behalf of Decatur Bridgewater;

e.    By disbursing funds from Decatur Bridgewater's reserve funds without the prior approval in writing of, or via email by two members of Decatur Bridgewater's Board of Directors;

f.    Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

g.    Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

h.    Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Decatur Bridgewater's funds.

35.

As a result of Northwest Empire's breach of the Management Agreement, Decatur Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve funds.

36.

Northwest Empire has failed and refused to return the operating funds and reserve funds to Decatur Bridgewater.

37.

Decatur Bridgewater is entitled to its attorney fees and costs pursuant to Article II,

Page 10 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100

687015.13482-001

EXHIBIT ___1___

1  section E of the Management Agreement.  Cedar Lake is also entitled to prejudgment interest

2  from the date of each misappropriation.

3

4  EIGHTH CLAIM FOR RELIEF

5  (Decatur Bridgewater – Negligence)

6  38.

7  Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, and 4,

8  above.

9  39.

10  As Managing Agent, Northwest Empire owed Decatur Bridgewater a duty to use

11  reasonable care when performing financial management services for Decatur Bridgewater.

12  40.

13  Northwest Empire negligently performed financial management services for Decatur

14  Bridgewater in one or more of the following ways:

15  a.   Failing to establish and maintain a separate custodial bank account for

16  Decatur Bridgewater's operating funds;

17  b.   Failing to establish and maintain a separate custodial bank account for

18  Decatur Bridgewater's reserve funds;

19  c.   By conmingling funds received for Decatur Bridgewater with funds

20  received from other homeowners associations;

21  d.   By disbursing Decatur Bridgewater's funds for purposes other than to pay

22  liabilities incurred on behalf of Decatur Bridgewater;

23  e.   By disbursing funds from Decatur Bridgewater's reserve funds without the

24  prior approval of in writing or via email by two members of Decatur

25  Bridgewater's Board of Directors;

26  f.   Failing to maintain a set of accounting records in accordance with

Page 11 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100

687015.13482-001
EXHIBIT _____1_____
PAGE  11  OF  116

generally accepted accounting principles;

g.     Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

h.     Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Decatur Bridgewater's funds.

41.

Northwest Empire's negligence was a substantial factor in causing Decatur Bridgewater to suffer damages in the amount of $72,099.18 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

### NINTH CLAIM FOR RELIEF

(Decatur Bridgewater – Conversion)

42.

Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, and 4 above.

43.

Northwest Empire converted Decatur Bridgewater's operating funds and reserve funds by taking them for its own purposes.

44.

As a result of Northwest Empire's breach of the Management Agreement, Decatur Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

45.

Northwest Empire has failed and refused to return the converted funds.

Page 12 - COMPLAINT

687015 13482-001
EXHIBIT     /
PAGE  /2 OF  //

## TENTH CLAIM FOR RELIEF

(Decatur Bridgewater – Breach of Fiduciary Duty)

46.

Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, 3, and 4, above.

47.

Decatur Bridgewater entrusted Northwest Empire with its reserve and operating funds. This entrustment created a fiduciary duty owed by Northwest Empire to Decatur Bridgewater.

48.

Northwest Empire breached its fiduciary duty of loyalty and of care to Decatur Bridgewater in one or more of the ways alleged in paragraph 5, 10, and 13, above, which are incorporated and realleged by reference.

49.

Northwest Empire's breach of its fiduciary obligations was a substantial factor, Decatur Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve funds. Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

## ELEVENTH CLAIM FOR RELIEF

(Decatur Bridgewater – Accounting)

50.

Decatur Bridgewater incorporates by reference and realleges paragraphs 1-4 and 17-19 above.

51.

Decatur Bridgewater is entitled to an accounting for all funds entrusted to Northwest

Page 13 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100

687015:13482-001
EXHIBIT     1
PAGE   13  OF  16

1 | Empire and to a judgment for all sums shown by the accounting to be owed by Northwest

2 | Empire.

3 | 52.

4 | Decatur Bridgewater is entitled to its attorney fees and costs pursuant to Article II,

5 | section E of the Management Agreement.

6 | TWELFTH CLAIM FOR RELIEF

7 | (Decatur Bridgewater – Unlawful Trade Practices)

8 | 53.

9 | Northwest Empire engaged in unlawful trade practices within the meaning of ORS

10 | 646.607 and ORS 646.608 in one or more of the following ways:

11 | a. Failing to establish and maintain a separate custodial bank account for

12 | Decatur Bridgewater's operating funds;

13 | b. Failing to establish and maintain a separate custodial bank account for

14 | Decatur Bridgewater's reserve funds;

15 | c. By conmingling funds received for Decatur Bridgewater with funds

16 | received from other homeowners associations;

17 | d. By disbursing Decatur Bridgewater's funds for purposes other than to pay

18 | liabilities incurred on behalf of Decatur Bridgewater;

19 | e. By disbursing funds from Decatur Bridgewater's reserve funds without the

20 | prior approval of in writing or via email by two members of Decatur

21 | Bridgewater's Board of Directors;

22 | f. Failing to maintain a set of accounting records in accordance with

23 | generally accepted accounting principles;

24 | g. Failing to distribute monthly to all members of the Board of Directors a

25 | financial statement for the previous month, including copies of an accurate

26 | balance sheet, statement of income and expenses, schedules of cash

Page 14 - COMPLAINT

687015.13482-001
EXHIBIT  *1*
PAGE  *14* OF  *11*

1    investments, reserve allocations, and check register of disbursements; and

2    h.    Failing to utilize all fraud control systems and methods available to

3    Northwest Empire for the protection of Decatur Bridgewater's funds.

4    54.

5    Northwest Empire willfully used or employed said unlawful trade practices.

6    55.

7    As a result of the unlawful trade practices committed by Northwest Empire, Decatur

8    Bridgewater has incurred damages in the amount of $72,099.18 for lost operating and reserve

9    funds. Decatur Bridgewater is also entitled to punitive damages under ORS 646.638(1).

10    56.

11    Decatur Bridgewater is entitled to reasonable attorney fees and costs under ORS

12    646.638(3).   Cedar Lake is also entitled to prejudgment interest from the date of each

13    misappropriation.

14    WHEREFORE, plaintiffs Cedar Lake and Decatur Bridgewater pray for judgment against

15    Defendant as follows:

16    1.    On Cedar Lake's First, Second, Third, Fourth, and Sixth Claims for Relief, the sum of

17    $60,776.52;

18    2.    On Decatur Bridgewater's Seventh, Eighth, Ninth, Tenth, and Twelfth Claims for

19    Relief, the sum of $72,099.18;

20    3.    On Cedar Lake's Fifth Claim for Relief, an order for an accounting and a money

21    judgment for all sums shown by the accounting to be owed by Defendant;

22    4.    On Decatur Bridgewater's Eleventh Claim for Relief, an order for an accounting and

23    a money judgment for all sums shown by the accounting to be owed by Defendant;

24    5.    On Cedar Lake's Sixth Claim for Relief and on Decatur Bridgewater's Twelfth Claim

25    for relief, punitive damage in an amount to be determined by the court or jury;

26    6.    Cedar Lake's attorney fees and costs for the First and Sixth Claims for Relief;

Page 15 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201

6870/5 13482-001
EXHIBIT ____/____
PAGE /5 OF //

1      7.    Decatur Bridgewater's attorney fees and costs for the First and Twelfth Claims for

2  Relief;

3      8.    For prejudgment interest from date of each misappropriation of Plaintiffs' funds; and

4      9.    For costs, postjudgment interest, and such other relief as may be proper and just.

5      DATED this 9th day of November, 2012.

6                LANDYE BENNETT BLUMSTEIN LLP

7

8                By:_____

9                    Stuart K. Cohen, OSB #851738
                     James S. Crane, OSB #901420
                     *Of Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 16 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100

687015.13482-001

EXHIBIT ___/___

**Crane, Jim**

| | |
|---|---|
| **From:** | Cohen, Stuart |
| **Sent:** | Wednesday, November 07, 2012 8:34 AM |
| **To:** | Crane, Jim |
| **Subject:** | FW: HOA Funds |

Admission e-mail. Greg Lloyd is one of the owners of NW Empire

**From:** decaturbridgewaterboard@nwempire.com [mailto:decaturbridgewaterboard@nwempire.com] **On Behalf Of**
Gregory Lloyd
**Sent:** Wednesday, June 06, 2012 4:44 PM
**To:** Decatur Bridgewater Board
**Subject:** HOA Funds

Hello Decatur Board,


On Monday 06/04/2012 it was discovered that your HOA's funds have been inappropriately allocated. We have held all expenditures on your account at this time while a forensic accountant reviews your account. At this time you may want to work with your account manager at NW Empire to file a claim under your Fidelity Bond/Employee Dishonesty for the full amount in your reserves and operating accounts. The final number can be changed once it is known. We will need to set up a time next week with your board to open new accounts which only have board member signing ability on them.


We will be having a meeting Monday morning at 7:30AM at the NW Empire office located at 3330 NW Yeon Ave Suite 200, Portland, OR 97210 to discuss this situation with myself, our forensic CPA and fraud attorney. We will provide coffee, donuts, bagels, etc. for you.  Please plan on attending this meeting.


If you would like to speak to John Brams (the forensic CPA) to discuss progress, please feel free to contact him at (503) 297-6466.


Kind Regards,


## Gregory Lloyd
*Senior Community Manager*

503-482-6812 | *direct*
503-278-3231 | *office*
503-200-1114 | *fax*

PO Box 28205 | Portland, OR | 97228

1

EXHIBIT  *2*
PAGE  *1*  OF  *1*

NW Empire
Summary of income (loss)                                                    **Cedar Lake**

<u>Summary of income (loss) from commingling of funds</u>
<u>Bank & account type</u>                                                      <u>Amount</u>

| | |
|---|---:|
| Commingling income (loss) - Chase operating account | ($48,776.52) |
| Commingling income (loss) - Chase reserve account | (12,000.00) |
| Commingling income (loss) - Bank of America operating account | 0.00 |
| Commingling income (loss) - Bank of America reserve account | 0.00 |
| 2010 funds that should have been received from sweep account | 0.00 |
| 2011 funds that should have been received from sweep account | 0.00 |
| 2012 funds that should have been received from sweep account | 0.00 |
| 2009 - 2012 funds received from sweep account - Chase | 0.00 |
| 2009 - 2012 funds received from sweep account - Bank of America | <u>0.00</u> |
| | |
| Total commingling income (loss) | <u>($60,776.52)</u> |

EXHIBIT _3_
PAGE _1_ OF _1_

NW Empire
Summary of income (loss)                                                                          **Decatur**

<u>Summary of income (loss) from commingling of funds</u>
<u>Bank & account type</u>                                                                          <u>Amount</u>

| | |
|---|---:|
| Commingling income (loss) - Chase operating account | $12,095.62 |
| Commingling income (loss) - Chase reserve account | (32,883.31) |
| Commingling income (loss) - Bank of America operating account | 1,962.38 |
| Commingling income (loss) - Bank of America reserve account | (15,985.75) |
| 2010 funds that should have been received from sweep account | (289.45) |
| 2011 funds that should have been received from sweep account | (26,565.22) |
| 2012 funds that should have been received from sweep account | (15,482.83) |
| 2009 - 2012 funds received from sweep account - Chase | 3,100.00 |
| 2009 - 2012 funds received from sweep account - Bank of America | <u>1,949.38</u> |
| | |
| Total commingling income (loss) | <u>($72,099.18)</u> |

EXHIBIT  4
PAGE     OF



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

Policy Number: 52 SBA ZV5572   SC                    ORIGINAL

Named Insured and Mailing Address;    PROFESSIONAL COMMUNITY
                                      SEE FORM IH1200
                                      PO BOX 28205
                                      PORTLAND          OR  97228

Policy Change Effective Date:    09/21/11        Effective hour is the same as stated in the
                                                 Declarations Page of the Policy.

Policy Change Number: 002

Agent Name:  AMERICAN BENEFITS GROUP
Code:    701028

## POLICY CHANGES:
        SENTINEL INSURANCE COMPANY, LIMITED

ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR BANK
ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
                        THIS IS NOT A BILL.

NO PREMIUM DUE AS OF POLICY CHANGE EFFECTIVE DATE


NAMED INSURED IS CHANGED TO READ:    NORTHWEST EMPIRE COMMUNITY
                                     MANAGEMENT


FORM NUMBERS OF ENDORSEMENTS REVISED AT ENDORSEMENT ISSUE:

IH12001185 NAMED INSURED




PRO RATA FACTOR: 0.112

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.

Form SS 12 11 04 05 T            Page 001
Process Date: 09/25/11                        Policy Effective Date: 11/01/10
                                              Policy Expiration Date: 11/01/11

                    INSURED COPY

                                              EXHIBIT  5
                                              PAGE  1  OF  7

*2000252ZV55720411*    01985

11
08
PV
SBA

This **Spectrum Policy** consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**  SENTINEL INSURANCE COMPANY, LIMITED
HARTFORD PLAZA, HARTFORD, CT 06115
COMPANY CODE: A

THE HARTFORD

**Policy Number:** 52 SEA PV0811  SC

# SPECTRUM POLICY DECLARATIONS

**Named Insured and Mailing Address:**        PACIFIC EMPIRE COMMUNITY MGMT
(No., Street, Town, State, Zip Code)

PO BOX 28205
PORTLAND              OR  97228

**Policy Period:**          **From**    11/17/11    **To**    11/17/12    1    YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in New Hampshire.

**Name of Agent/Broker:** AMERICAN BENEFITS GROUP
**Code:**  701028

**Previous Policy Number:**      NEW

**Named Insured is:** CORPORATION

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**              $755

Countersigned by _____
                          Authorized Representative              Date

Form SS 00 02 12 06
Process Date: 11/22/11

Page 001 (CONTINUED ON NEXT PAGE)
**Policy Expiration Date:** 11/17/12

EXHIBIT  5
PAGE 2 OF 7

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 52 SBA PV0811

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $2,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $   10,000 |
| PERSONAL AND ADVERTISING INJURY | $2,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU<br>    ANY ONE PREMISES | $1,000,000 |
| AGGREGATE LIMITS<br>    PRODUCTS-COMPLETED OPERATIONS | $4,000,000 |
|     GENERAL AGGREGATE | $4,000,000 |

BUSINESS LIABILITY OPTIONAL
COVERAGES

| HIRED/NON-OWNED  AUTO  LIABILITY | $2,000,000 |
|---|---|

CYBERFLEX  COVERAGE
FORM SS 40 26

Form SS 00 02 12 06
Process Date: 11/22/11

Page 005 (CONTINUED  ON NEXT PAGE)
Policy Expiration Date: 11/17/12

EXHIBIT 5
PAGE 3 OF 7



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company
## COMMON POLICY DECLARATIONS

**Policy Number:** PHSD697856

**Named Insured and Mailing Address:**
Northwest Empire Community Management
PO BOX 28205
PORTLAND, OR 97228-8205

**Producer:** 18700
American Benefits Inc.
9755 SW Barnes Road, Suite 290
Portland, OR 97224

**Policy Period From:** 02/10/2012  **To:** 02/10/2013

at 12:01 A.M. Standard Time at your mailing
address shown above.

**Business Description:** Property Manager

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| Miscellaneous Professional | 1,898.00 |
| **Total** | **$ 1,898.00** |

FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE
Refer To Forms Schedule

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (01/07)

_____
Countersignature Date

_Geo. S. Sweeney_
Authorized Representative

EXHIBIT 5
PAGE 4 OF 7

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHSD697856

# Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| CSNotice-1 | 0411 | Making Things Easier |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 0211 | Policyholder Notice (Loss Assistance Hotline) |
| CPD-PIIC | 0107 | Common Policy Declarations |
| PP 0701 | 0701 | Privacy Policy Notice |
| IL0985 | 0108 | Disclosure Pursuant to Terrorism Risk Ins Act of 2002 |

EXHIBIT 5
PAGE 5 OF 7

PI-PLSP-001 (08/07)

 PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Cover-Pro$^{sm}$

☒ Philadelphia Indemnity Insurance Company          ☐ Philadelphia Insurance Company

## DECLARATIONS

**Policy Number:** PHSD697856

NOTICE: THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR INVESTIGATION AND LEGAL COSTS. FURTHER NOTE THAT AMOUNTS INCURRED FOR SUCH COST SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT

Item 1.        **Named Entity** and Address:

Northwest Empire Community Management
PO BOX 28205
PORTLAND, OR 97228-8205

Item 2.        **Policy Period**: From: 02/10/2012 To: 02/10/2013
                                      (12:01 A.M. Standard Time)

Item 3.        Premium:        $        1,898

Item     4.    Limits of Liability:  (A) $    1,000,000     Each **Claim**, including **Claim Expense**

                                      (B) $    1,000,000     Annual Aggregate, including **Claim Expense**

Item     5.    Deductible:        $        5,000     Deductible per **Claim**

Item     6.    Retroactive Date: 12/31/2009

Item     7.    Continuity Date: 12/31/2009

Item     8.    Additional Premium for Supplemental Extended Reporting Period: Refer to PI-PLSP-176

EXHIBIT    5
PAGE    6  OF  7

PI-PLSP-001 (08/07)

Item    9.    **Named Entity's** Profession:

        Property Manager

Endorsements: See Schedule


By accepting this Policy, the **Insured** agrees that the statements in the application are personal representations, that they shall be deemed material, and that this Policy is issued in reliance upon the truth of such representations.


_____         _____         _____
Authorized Representative               Countersignature                        Countersignature Date

EXHIBIT  5
PAGE  7  OF  7

ENTERED

NOV - 9 2012

IN REGISTER BY RRM

FILED
12 NOV -9 PM 2: 22
FOR MULTNOMAH COUNTY

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

**CEDAR LAKE HOMEOWNERS
ASSOCIATION**, an Oregon domestic
nonprofit corporation; and **DECATUR
BRIDGEWATER VISTA
CONDOMINIUMS OWNERS'
ASSOCIATION**, an Oregon domestic
nonprofit corporation,

       Plaintiffs,

       v.

**NORTHWEST EMPIRE
COMMUNITY MANAGEMENT, INC.**,
fka Professional Community Management,
Inc., an Oregon corporation,

       Defendant.

1211-14420

Case No. **14420**

**COMPLAINT
(Breach of Contract; Negligence;
Conversion; Breach of Fiduciary Duty;
Accounting; Unlawful Trade Practices;
Attorney Fees)**

Not Subject to Mandatory Arbitration

Jury Trial Requested

**Plaintiffs' Claim: $132,875.70
Statutory Filing Fee: Or Laws 2012, ch.
48, sec. 2; ORS 21.160(1)(c)**

Plaintiffs Cedar Lakes Homeowners Association ("Cedar Lakes") and Decatur

Bridgewater Vista Condominiums Owners' Association ("Decatur Bridgewater") allege as

follows:

**FIRST CLAIM FOR RELIEF**

(Cedar Lake – Breach of Contract)

1.

Cedar Lakes Homeowners Association is a nonprofit corporation organized under the

Oregon Nonprofit Corporation Act, Chapter 65 of the Oregon Revised Statutes. Cedar Lakes is

located in Gresham, Oregon.

2.

On or about June 9, 2011, Cedar Lake through its Board of Directors entered into that

certain Management Agreement with defendant Northwest Empire Community Management,

Page 1 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687015.13482-001

1  Inc., then known as Professional Community Management, Inc. ("Defendant" or "Northwest

2  Empire"). The Management Agreement continued until effect until terminated by Cedar Lake in

3  or about June 2012.

4                                                    3.

5          Under the Management Agreement, Northwest Empire agreed to provide professional

6  services directed towards the management of the residential properties in Cedar Lake, including

7  professional services for financial management, among others.   The financial management

8  services included, among others, the collection and deposit of maintenance assessments from

9  Cedar Lake's owners; the creation and maintenance of a separate bank account to hold funds for

10 payment of Cedar Lake's operating expenses (an "operating account"); the creation and

11 maintenance of a separate bank account to hold Cedar Lake's reserve funds (a "reserve

12 account"); the distribution of funds from the operating and reserve accounts to pay liabilities

13 incurred on behalf of Cedar Lake; the maintenance of accounting records in accordance with

14 generally accepted accounting principles; the monthly distribution to all members of the Board

15 of Directors of a financial statement for the previous month, including copies of the balance

16 sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and

17 a check register of disbursements; and the utilization of all fraud control systems and methods

18 available to Northwest Empire for the protection of Cedar Lake's funds.

19                                                   4.

20         On or about June 6, 2012, Northwest Empire informed Cedar Lake that Cedar Lake's

21 funds had been "inappropriately misappropriated."   Subsequently, Northwest Empire informed

22 Cedar Lake that funds received by Northwest Empire for Cedar Lake had been conmingled with

23 funds received by Northwest Empire for other homeowners associations, and that funds had been

24 disbursed for purposes other than to pay liabilities incurred on behalf of Cedar Lake.

25                                                   5.

26         Northwest Empire breached the Management Agreement with Cedar Lake in one or more

Page 2 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

687015.13482-001

of the following ways:

      a.     Failing to establish and maintain a separate custodial bank account for Cedar Lake's operating funds;

      b.     Failing to establish and maintain a separate custodial bank account for Cedar Lake's reserve funds;

      c.     By conmingling funds received for Cedar Lake with funds received from other homeowners associations;

      d.     By disbursing Cedar Lake's funds for purposes other than to pay liabilities incurred on behalf of Cedar Lake;

      e.     By disbursing funds from Cedar Lake's reserve funds without the prior approval in writing of, or via email by two members of Cedar Lake's Board of Directors;

      f.     Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

      g.     Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

      h.     Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Cedar Lake's funds.

6.

As a result of Northwest Empire's breach of the Management Agreement, Cedar Lake has incurred damages in the amount of $60,776.52 for lost operating and reserve funds.

7.

Northwest Empire has failed and refused to return the operating funds and reserve funds to Cedar Lake.

Page 3 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687015.13482-001

8.

Cedar Lake is entitled to attorney fees and costs pursuant to Article II, section E of the Management Agreement, and to prejudgment interest from the date of each misappropriation.

## SECOND CLAIM FOR RELIEF

(Cedar Lake – Negligence)

9.

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, and 4, above.

10.

As Managing Agent, Northwest Empire owed Cedar Lake a duty to use reasonable care when performing financial management services for Cedar Lake.

11.

Northwest Empire negligently performed financial management services for Cedar Lake in one or more of the following ways:

      a.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's operating funds;

      b.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's reserve funds;

      c.    By conmingling funds received for Cedar Lake with funds received from other homeowners associations;

      d.    By disbursing Cedar Lake's funds for purposes other than to pay liabilities incurred on behalf of Cedar Lake;

      e.    By disbursing funds from Cedar Lake's reserve funds without the prior approval in writing of, or via email by two members of Cedar Lake's Board of Directors;

      f.    Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*687015.13482-001*

g.   Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

h.   Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Cedar Lake's funds.

12.

Northwest Empire's negligence was a substantial factor in causing Cedar Lake to suffer damages in the amount of $60,776.52 for lost operating and reserve funds.  Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

**THIRD CLAIM FOR RELIEF**

(Cedar Lake – Conversion)

13.

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, and 4 above.

14.

Northwest Empire converted Cedar Lake's operating funds and reserve funds by taking them for its own purposes.

15.

As a result of Northwest Empire's breach of the Management Agreement, Cedar Lake has incurred damages in the amount of $60,776.52, consisting of the loss of operating funds in the amount of $60,776.52 for lost operating and reserve funds.  Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

16.

Northwest Empire has failed and refused to return the converted funds.

/////
/////

Page 5 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687015.13482-001

1

2

## FOURTH CLAIM FOR RELIEF

(Cedar Lake – Breach of Fiduciary Duty)

3

17.

4

Cedar Lake incorporates by reference and realleges paragraphs 1, 2, 3, and 4, above.

5

18.

6

Cedar Lake entrusted Northwest Empire with its reserve and operating funds. This

7

entrustment created a fiduciary duty owed by Northwest Empire to Cedar Lake.

8

19.

9

Northwest Empire breached its fiduciary duty of loyalty and care to Cedar Lake in one or

10

more of the ways alleged in paragraphs 5, 10, and 13, above, which are incorporated and

11

realleged by reference.

12

20.

13

Northwest Empire's breach of its fiduciary obligations was a substantial factor in Cedar

14

Lake incurring damages in the amount of $60,776.52 for lost operating and reserve funds. Cedar

15

Lake is also entitled to prejudgment interest from the date of each misappropriation.

16

## FIFTH CLAIM FOR RELIEF

(Cedar Lake – Accounting)

17

18

21.

19

Cedar Lake incorporates by reference and realleges paragraphs 1-4 and 17-19 above.

20

22.

21

Cedar Lake is entitled to an accounting for all funds entrusted to Northwest Empire and

22

to a judgment for all sums shown by the accounting to be owed by Northwest Empire.

23

23.

24

Cedar Lake is entitled to its attorney fees pursuant to Article II, section E of the

25

Management Agreement.

26

/////

Page 6 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

687015.13482-001

## SIXTH CLAIM FOR RELIEF

(Cedar Lake – Unlawful Trade Practices)

24.

Cedar Lake incorporates by reference and realleges paragraphs 1-4, above.

25.

Northwest Empire provided services to Cedar Lake for household purposes of Cedar Lake's members.

26.

Northwest Empire engaged in unlawful trade practices within the meaning of ORS 646.607 and ORS 646.608 in one or more of the following ways:

    a.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's operating funds;

    b.    Failing to establish and maintain a separate custodial bank account for Cedar Lake's reserve funds;

    c.    By conmingling funds received for Cedar Lake with funds received from other homeowners associations;

    d.    By disbursing Cedar Lake's funds for purposes other than to pay liabilities incurred on behalf of Cedar Lake;

    e.    By disbursing funds from Cedar Lake's reserve funds without the prior approval in writing of, or via email by two members of Cedar Lake's Board of Directors;

    f.    Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

    g.    Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash

Page 7 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (facsimile)

*687015.13482-001*

1                 investments, reserve allocations, and check register of disbursements; and

2         h.      Failing to utilize all fraud control systems and methods available to

3               Northwest Empire for the protection of Cedar Lake's funds.

4                            27.

5 Northwest Empire willfully used or employed said unlawful trade practices.

6                            28.

7 As a result of the unlawful trade practices committed by Northwest Empire, Cedar Lake

8 has incurred damages in the amount of $60,776.52 for lost operating and reserve funds. Cedar

9 Lake is also entitled to punitive damages under ORS 646.638(1).

10                          29.

11 Cedar Lake is entitled to reasonable attorney fees and costs under ORS 646.638(3).

12 Cedar Lake is also entitled to prejudgment interest from the date of each misappropriation.

13              **SEVENTH CLAIM FOR RELIEF**

14         (Decatur Bridgewater – Breach of Contract)

15                30.

16 Decatur Bridgewater Vista Condominiums Owners' Association is a nonprofit

17 corporation organized under the Oregon Nonprofit Corporation Act, Chapter 65 of the Oregon

18 Revised Statutes. Decatur Bridgewater is located in Portland, Oregon.

19                31.

20 On or about November 14, 2010, Decatur Bridgewater through its Board of Directors

21 entered into that certain Management Agreement with defendant Northwest Empire Community

22 Management, Inc., then known as Professional Community Management, Inc. ("Defendant" or

23 "Northwest Empire"). The Management Agreement continued until effect until terminated in or

24 about June 2012.

25                32.

26 Under the Management Agreement, Northwest Empire agreed to provide professional

Page 8 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

687015.13482-001

1  services directed towards the management of the residential properties in Decatur Bridgewater,

2  including professional services for financial management, among others.    The financial

3  management services included, among others, the collection and deposit of maintenance

4  assessments from Decatur Bridgewater's owners; the creation and maintenance of a separate

5  bank account to hold funds for payment of Decatur Bridgewater's operating expenses (an

6  "operating account"); the creation and maintenance of a separate bank account to hold Decatur

7  Bridgewater's reserve funds (a "reserve account"); the distribution of funds from the operating

8  and reserve accounts to pay liabilities incurred on behalf of Decatur Bridgewater; the

9  maintenance of accounting records in accordance with generally accepted accounting principles;

10  the monthly distribution to all members of the Board of Directors of a financial statement for the

11  previous month, including copies of the balance sheet, statement of income and expenses,

12  schedules of cash investments, reserve allocations, and a check register of disbursements; and the

13  utilization of all fraud control systems and methods available to Northwest Empire for the

14  protection of Decatur Bridgewater's funds.

15                                    33.

16      On or about June 6, 2012, Northwest Empire informed Decatur Bridgewater that Decatur

17  Bridgewater's funds had been "inappropriately misappropriated."    Subsequently, Northwest

18  Empire informed Decatur Bridgewater that funds received by Northwest Empire for Decatur

19  Bridgewater had been conmingled with funds received by Northwest Empire for other

20  homeowners associations, and that funds had been disbursed for purposes other than to pay

21  liabilities incurred on behalf of Decatur Bridgewater.

22                                    34.

23      Northwest Empire breached the Management Agreement with Decatur Bridgewater in

24  one or more of the following ways:

25          a.      Failing to establish and maintain a separate custodial bank account for

26                  Decatur Bridgewater's operating funds;

Page 9 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503-224-4100
503-224-4133 (facsimile)

*687015.13482-001*

b.      Failing to establish and maintain a separate custodial bank account for Decatur Bridgewater's reserve funds;

c.      By conmingling funds received for Decatur Bridgewater with funds received from other homeowners associations;

d.      By disbursing Decatur Bridgewater's funds for purposes other than to pay liabilities incurred on behalf of Decatur Bridgewater;

e.      By disbursing funds from Decatur Bridgewater's reserve funds without the prior approval in writing of, or via email by two members of Decatur Bridgewater's Board of Directors;

f.      Failing to maintain a set of accounting records in accordance with generally accepted accounting principles;

g.      Failing to distribute monthly to all members of the Board of Directors a financial statement for the previous month, including copies of an accurate balance sheet, statement of income and expenses, schedules of cash investments, reserve allocations, and check register of disbursements; and

h.      Failing to utilize all fraud control systems and methods available to Northwest Empire for the protection of Decatur Bridgewater's funds.

35.

As a result of Northwest Empire's breach of the Management Agreement, Decatur Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve funds.

36.

Northwest Empire has failed and refused to return the operating funds and reserve funds to Decatur Bridgewater.

37.

Decatur Bridgewater is entitled to its attorney fees and costs pursuant to Article II,

Page 10 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*687015.13482-001*

1  section E of the Management Agreement.  Cedar Lake is also entitled to prejudgment interest

2  from the date of each misappropriation.

3

4                          **EIGHTH CLAIM FOR RELIEF**

5                          (Decatur Bridgewater – Negligence)

6                                    38.

7      Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, and 4,

8  above.

9                                    39.

10     As Managing Agent, Northwest Empire owed Decatur Bridgewater a duty to use

11  reasonable care when performing financial management services for Decatur Bridgewater.

12                                   40.

13     Northwest Empire negligently performed financial management services for Decatur

14  Bridgewater in one or more of the following ways:

15         a.      Failing to establish and maintain a separate custodial bank account for

16                 Decatur Bridgewater's operating funds;

17         b.      Failing to establish and maintain a separate custodial bank account for

18                 Decatur Bridgewater's reserve funds;

19         c.      By conmingling funds received for Decatur Bridgewater with funds

20                 received from other homeowners associations;

21         d.      By disbursing Decatur Bridgewater's funds for purposes other than to pay

22                 liabilities incurred on behalf of Decatur Bridgewater;

23         e.      By disbursing funds from Decatur Bridgewater's reserve funds without the

24                 prior approval of in writing or via email by two members of Decatur

25                 Bridgewater's Board of Directors;

26         f.      Failing to maintain a set of accounting records in accordance with

Page 11 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*687015.13482-001*

1    generally accepted accounting principles;

2    g.    Failing to distribute monthly to all members of the Board of Directors a

3          financial statement for the previous month, including copies of an accurate

4          balance sheet, statement of income and expenses, schedules of cash

5          investments, reserve allocations, and check register of disbursements; and

6    h.    Failing to utilize all fraud control systems and methods available to

7          Northwest Empire for the protection of Decatur Bridgewater's funds.

8                                      41.

9    Northwest Empire's negligence was a substantial factor in causing Decatur Bridgewater

10   to suffer damages in the amount of $72,099.18 for lost operating and reserve funds.  Cedar Lake

11   is also entitled to prejudgment interest from the date of each misappropriation.

12                          **NINTH CLAIM FOR RELIEF**

13                      (Decatur Bridgewater – Conversion)

14                                     42.

15   Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, and 4

16   above.

17                                     43.

18   Northwest Empire converted Decatur Bridgewater's operating funds and reserve funds by

19   taking them for its own purposes.

20                                     44.

21   As a result of Northwest Empire's breach of the Management Agreement, Decatur

22   Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve

23   funds.    Cedar Lake is also entitled to prejudgment interest from the date of each

24   misappropriation.

25                                     45.

26   Northwest Empire has failed and refused to return the converted funds.

Page 12 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

*687015.13482-001*

1

2                               **TENTH CLAIM FOR RELIEF**

3                          (Decatur Bridgewater – Breach of Fiduciary Duty)

4                                            46.

5        Decatur Bridgewater incorporates by reference and realleges paragraphs 1, 2, 3, and 4,

6   above.

7                                            47.

8        Decatur Bridgewater entrusted Northwest Empire with its reserve and operating funds.

9   This entrustment created a fiduciary duty owed by Northwest Empire to Decatur Bridgewater.

10                                           48.

11       Northwest Empire breached its fiduciary duty of loyalty and of care to Decatur

12  Bridgewater in one or more of the ways alleged in paragraph 5, 10, and 13, above, which are

13  incorporated and realleged by reference.

14                                           49.

15       Northwest Empire's breach of its fiduciary obligations was a substantial factor, Decatur

16  Bridgewater has incurred damages in the amount $72,099.18 for lost operating and reserve

17  funds.    Cedar Lake is also entitled to prejudgment interest from the date of each

18  misappropriation.

19

20                              **ELEVENTH CLAIM FOR RELIEF**

21                             (Decatur Bridgewater – Accounting)

22                                           50.

23       Decatur Bridgewater incorporates by reference and realleges paragraphs 1-4 and 17-19

24  above.

25                                           51.

26       Decatur Bridgewater is entitled to an accounting for all funds entrusted to Northwest

Page 13 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*687015.13482-001*

1    Empire and to a judgment for all sums shown by the accounting to be owed by Northwest

2    Empire.

3                                              52.

4        Decatur Bridgewater is entitled to its attorney fees and costs pursuant to Article II,

5    section E of the Management Agreement.

6                          **TWELFTH CLAIM FOR RELIEF**

7                    (Decatur Bridgewater – Unlawful Trade Practices)

8                                              53.

9        Northwest Empire engaged in unlawful trade practices within the meaning of ORS

10   646.607 and ORS 646.608 in one or more of the following ways:

11            a.    Failing to establish and maintain a separate custodial bank account for

12                  Decatur Bridgewater's operating funds;

13            b.    Failing to establish and maintain a separate custodial bank account for

14                  Decatur Bridgewater's reserve funds;

15            c.    By conmingling funds received for Decatur Bridgewater with funds

16                  received from other homeowners associations;

17            d.    By disbursing Decatur Bridgewater's funds for purposes other than to pay

18                  liabilities incurred on behalf of Decatur Bridgewater;

19            e.    By disbursing funds from Decatur Bridgewater's reserve funds without the

20                  prior approval of in writing or via email by two members of Decatur

21                  Bridgewater's Board of Directors;

22            f.    Failing to maintain a set of accounting records in accordance with

23                  generally accepted accounting principles;

24            g.    Failing to distribute monthly to all members of the Board of Directors a

25                  financial statement for the previous month, including copies of an accurate

26                  balance sheet, statement of income and expenses, schedules of cash

Page 14 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224-4133 (facsimile)

*687015.13482-001*

1  investments, reserve allocations, and check register of disbursements; and

2  h.  Failing to utilize all fraud control systems and methods available to

3  Northwest Empire for the protection of Decatur Bridgewater's funds.

4  54.

5  Northwest Empire willfully used or employed said unlawful trade practices.

6  55.

7  As a result of the unlawful trade practices committed by Northwest Empire, Decatur

8  Bridgewater has incurred damages in the amount of $72,099.18 for lost operating and reserve

9  funds. Decatur Bridgewater is also entitled to punitive damages under ORS 646.638(1).

10  56.

11  Decatur Bridgewater is entitled to reasonable attorney fees and costs under ORS

12  646.638(3). Cedar Lake is also entitled to prejudgment interest from the date of each

13  misappropriation.

14  WHEREFORE, plaintiffs Cedar Lake and Decatur Bridgewater pray for judgment against

15  Defendant as follows:

16  1.  On Cedar Lake's First, Second, Third, Fourth, and Sixth Claims for Relief, the sum of

17  $60,776.52;

18  2.  On Decatur Bridgewater's Seventh, Eighth, Ninth, Tenth, and Twelfth Claims for

19  Relief, the sum of $72,099.18;

20  3.  On Cedar Lake's Fifth Claim for Relief, an order for an accounting and a money

21  judgment for all sums shown by the accounting to be owed by Defendant;

22  4.  On Decatur Bridgewater's Eleventh Claim for Relief, an order for an accounting and

23  a money judgment for all sums shown by the accounting to be owed by Defendant;

24  5.  On Cedar Lake's Sixth Claim for Relief and on Decatur Bridgewater's Twelfth Claim

25  for relief, punitive damage in an amount to be determined by the court or jury;

26  6.  Cedar Lake's attorney fees and costs for the First and Sixth Claims for Relief;

Page 15 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

*687015.13482-001*

7.    Decatur Bridgewater's attorney fees and costs for the First and Twelfth Claims for Relief;

8.    For prejudgment interest from date of each misappropriation of Plaintiffs' funds; and

9.    For costs, postjudgment interest, and such other relief as may be proper and just.

DATED this 9th day of November, 2012.

LANDYE BENNETT BLUMSTEIN LLP

By: _____
Stuart K. Cohen, OSB #851738
James S. Crane, OSB #901420
*Of Attorneys for Plaintiffs*

Page 16 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

687015.13482-001