IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CEDAR LAKE HOMEOWNERS
ASSOCIATION, an Oregon domestic
nonprofit corporation; and DECATUR
BRIDGEWATER HOMEOWNERS
ASSOCIATION, an Oregon domestic
nonprofit corporation,

                        Plaintiffs,

v.

NORTHWEST EMPIRE COMMUNITY
MANAGEMENT, INC., fka Professional
Community Management, Inc., an Oregon
corporation,

                        Defendant,

        and

SENTINEL INSURANCE COMPANY,
LTD., a Connecticut corporation,

                        Garnishee.

3:14-cv-00599-PK

FINDINGS AND
RECOMMENDATION

---

PAPAK, Magistrate Judge:

        Plaintiffs Cedar Lake Homeowners Association and Decatur Bridgewater Vista

Page 1 - FINDINGS AND RECOMMENDATION

Condominiums Owners' Association (collectively, "Plaintiffs") bring this garnishment action against Garnishee Sentinel Insurance Company, LTD ("Sentinel" or "Garnishee") seeking an (1) adjudication that Garnishee's responses to Plaintiffs' writs of garnishment are deficient and (2) a judgment against Sentinel in favor of Plaintiffs for the amount that Plaintiffs garnished under Defendant Northwest Empire Community Management's ("Northwest Empire" or "Defendant") claim based on Northwest Empire's Employee Dishonesty and Computer Fraud Endorsement provided by Sentinel. Plaintiffs argue that, if Northwest Empire's insurance claim is valid, then Sentinel must pay Plaintiffs $164,169.40 under the writ of garnishment served on Sentinel.

Now before the court are Plaintiffs' and Sentinel's cross-motions for summary judgment on Plaintiffs' garnishment claim. I have reviewed the record, the relevant exhibits, and all of the briefings. For the following reasons, Plaintiffs' Motion (#19) should be denied and Sentinel's Cross-Motion (#23) should be granted.

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiffs are two homeowners associations incorporated in Oregon and located in Portland, Oregon. Both are former clients of Northwest Empire. *See* Stipulated Order Concerning Facts ("Stip'd. Facts"), #22, 2. Northwest Empire formerly provided community management and financial services to Plaintiffs and other HOAs. *Id.* Sentinel is a fire and casualty insurance company organized in and incorporated under the laws of the state of Connecticut with its principal place of business in Connecticut. *Id.*

## II.    David Kobbeman's Theft

In November 2010 and June 2011, Plaintiffs entered into separate Management Agreements with Northwest Empire, which stayed in effect until June 2012. The Management Agreements contained specific provisions regarding financial services, including: (1) creation and maintenance of separate custodial bank accounts; (2) distribution of funds from operating and reserve accounts; (3) maintenance of accounting records; (4) preparation of monthly financial statements for client boards; and (5) fraud control systems and methods for protection of the custodial funds. Stip'd. Facts, 4.

Plaintiffs filed suit and obtained a judgment of $149,014.89 against Northwest Empire arising from a theft of $1,666,000 of various HOA funds from custodial accounts held by Northwest Empire by David Kobbeman, Northwest Empire's Corporate Secretary, Vice President, and Chief Financial Officer. *Id.* at 2, 4. Kobbeman was also a forty percent owner of King Magsulit Holdings, which is Northwest Empire's parent company, and his holdings in that company are second only to those of Gregory Lloyd, Northwest Empire's President, who at the time owned the other sixty percent of King Magsulit Holdings. Decl. Janis Puracal, #24, Ex. 22 (#24-3), 2. Essentially, Kobbeman diverted funds from custodial accounts held by Northwest Empire for its various client homeowners' associations ("HOA") to his own accounts. *Id.* at 3–4.

On November 7, 2012, Plaintiffs filed suit against Northwest Empire, alleging vicarious liability for Kobbeman's actions. On March 27, 2013, Plaintiffs obtained a default judgment in that suit in the amount of $149,014.89, including costs and attorney fees ("the Judgment"). *Id.* at 4; Default Judgment, #1-2, 56–59. On March 21, 2014, Plaintiffs obtained a supplemental judgment for attorney fees and costs in the amount of $15,164.51. *Id.*

Page 3 - FINDINGS AND RECOMMENDATION

The United Stated Department of Justice then charged Kobbeman with wire fraud related to his theft and misappropriation. On July 24, 2013, Kobbeman admitted to the charge. On May 28, 2014, U.S. District Court Judge Michael Simon presided over Kobbeman's sentencing hearing. At the hearing, a Sentencing Memorandum was produced which illustrated Kobbeman's illicit transfers of funds from one of the victim HOAs (which is not a party to this suit). The parties stipulate to the contents of the Sentencing Memorandum. Stip'd. Facts, #22, 5; Sentencing Memorandum, #22-8. Following that hearing, Judge Simon sentenced Kobbeman to 48 months in prison and ordered him to pay restitution to the HOAs in the amount of $1,666,543.88. Stip'd. Facts, #22, 5; Amended Judgment, #22-10.

## III.    The Underlying Policy and Claim

During the relevant time period, Northwest Empire was insured under the Hartford Spectrum Business Insurance Policy, no. 52 SBA ZV 5572 ("the Policy"). Stip'd. Facts, #22, 5. The Policy was issued by Sentinel and gives rise to the current dispute. The Policy provided a maximum Employee Dishonesty Coverage of $250,000, as well as "Super Stretch for Business Services," which provides additional Employee Dishonesty Coverage of $25,000. Policy, #22-11.

Northwest Empire submitted a claim so Sentinel ("the Claim") for the losses arising from Kobbeman's actions. In response, Sentinel informed Northwest Empire that the information provided was insufficient to trigger coverage based upon the terms and conditions of the Policy, and Sentinel requested additional information which Northwest Empire did not provide. Sentinel proceeded to close its file on the Claim, under the condition that it would reopen the file should Northwest Empire provide the requested information. Stip'd. Facts, #22, 5–6.

On April 3, 2013, Plaintiffs served a Writ of Garnishment on Sentinel. The Writ covered proceeds that Plaintiffs allege are due to Northwest Empire under the Claim in the amount of $149,044.39 awarded in the Judgment. *Id.*. at 6. Sentinel responded to Plaintiffs by informing them that it had categorized the Claim as inactive and therefore did not determine coverage. Stip'd. Facts, #22, 6.

In November 2013, Northwest Empire's President, Gregory Lloyd, provided Sentinel with supplemental documents and information for the Claim. Those documents included: (1) a notarized claim request signed by Lloyd; (2) an October 2013 email from Northwest Empire's attorney submitted in support of the Claim; (3) Lloyd's affidavit regarding the attached documents; (4) Northwest Empire's file regarding Kobbeman, including his I-9, W-4, and W-2 Forms, as well as a letter of termination of Kobbeman dated June 4, 2012; (5) an October 2013 letter from Northwest Empire's attorney; (6) an email from Assistant United States Attorney Michelle Kerin regarding Kobbeman's guilty plea; and (7) a copy of the "Information" against Kobbeman submitted by Kerin in support of Kobbeman's wire fraud charge. *See* Supplemental Information #22-14 (documents (1)–(6)); Information, #22-6 (document (7)).

Sentinel responded to the submission with a letter dated November 21, 2013, in which Sentinel detailed reasons the documents provided were insufficient to establish an employee dishonesty loss triggering coverage under the Policy. Sentinel's Supplemental Response No. 1, #22-15.

On January 28, 2014, Plaintiffs submitted additional information regarding the Claim. Additional Supplemental Information, #22-16. On March 10, 2014, Sentinel submitted a letter similar in form to the November 2013 letter, again stating reasons the documents provided were

Page 5 - FINDINGS AND RECOMMENDATION

insufficient to trigger coverage under the Policy. Sentinel's Supplemental Response No. 2, #22-17.

On January 30, 2015, Plaintiffs served a Writ of Garnishment for Supplemental Judgment ("Writ") on Sentinel under the Claim in the amount of $16,290.01, which included the $15,164.51 awarded in the supplemental judgment in addition to post-judgment interest and garnishment costs. Writ, #22-18.

On February 6, 2015, Sentinel responded to the Writ. Writ Response, #22-19. Sentinel did not deliver any funds pursuant to the Writ, and states that it is not able to make any coverage determination. *Id.*

## IV.    Relevant Policy Provisions

### A.    Special Property Coverage Endorsement

This endorsement provides coverage against the loss of money or securities in a bank from theft. Policy Provisions, #22-11, 31. This coverage, however, excludes theft by an officer, manager, employee, or director. *Id.* at 42. Plaintiffs maintain the relevance of this section, despite its exclusions, because it does not include a definition of "employee."

### B.    Employee Dishonesty Coverage Endorsement

The Employee Dishonesty Coverage Endorsement provides the coverage relevant to the current dispute.

#### 1.    Covered Property

"Covered Property" is defined as "money", "securities", and other tangible property of intrinsic value and not otherwise excluded.

2.      **Covered Causes of Loss**

Covered Causes of Loss means dishonest acts committed by an "employee", **except you**, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

a.      Cause you to sustain a loss; and also

b.      Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:

(1) That "employee"; or

(2) Any person or organization intended by the "employee" to receive that benefit.

* * *

3.      **Additional Coverages**

b.      Employees at Client or Customer Premises

We will pay for any loss caused by your "employee" while at the premises of your client or customer and covered by this policy may only be made by you in your proof of Loss. No third party has a direct right against this insurance and no third party may make a direct claim against as the writer of your insurance.

Policy Provisions, #22-11, 95 (emphasis added).

"You" is defined in the policy as the named insured, which is Northwest Empire for the purposes of this case. *E.g., id.* at 51 (explaining "'you' and 'your' refer to the Named Insured shown in the Declarations"). This section does not contain a definition of the term "employee."

This endorsement includes an "Exclusions" to coverage provision that states "[t[he following Exclusions apply in addition to the Exclusions in the Crime Common Conditions and Exclusions," thereby incorporating that endorsement by reference, as discussed below *Id.* at 96.

Page 7 - FINDINGS AND RECOMMENDATION

### C.    Super Stretch for Business Services Endorsement

This endorsement provides the additional coverage for losses incurred from employee dishonesty. It is "subject to the provisions of Employee Dishonesty Coverage . . . ." Policy Provisions, #22-11, 110. This endorsement does not include a definition of "employee."

### D.    Crime Common Conditions and Exclusions

The parties do not assert that the coverage provided for in the Crime Common Conditions and Exclusions Endorsement of the Policy is triggered by Kobbeman's actions, but this section does define the types of individuals or entities that constitute an "employee" as well as what "'Employee' does not mean." Policy Provisions, #22-11, 106. As stated above, the exclusions covered in this section are incorporated by reference into the Employee Dishonesty Coverage Endorsement.

This section of the Policy defines "employee" to include:

1.    Any natural person:

      a.    While in your service (and for 60 days after termination of service); and

      b.    Whom you compensate directly by salary, wages, or commissions; and

      c.    Whom you have the right to direct and control while performing services for you.

* * *

4.    Any natural person who is a non-compensated officer.

* * *

6.    **Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting with the scope of the usual duties of an employee.**

*Id.* (emphasis added).

Page 8 - FINDINGS AND RECOMMENDATION

The same definition section states that "employee" does not mean:

> (2)    **Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".**

*Id.* (emphasis added).

## PROCEDURAL BACKGROUND

On April 3, 2014, Plaintiffs served on Sentinel allegations against it that were filed in the Circuit Court of Oregon for the Multnomah County (#1-1). Thereafter, Sentinel removed to this court based on diversity jurisdiction, pursuant to 28 U.S.C. §§ 1441, 1446. Diversity jurisdiction was initially disputed, and Judge Ancer L. Haggerty held a telephonic conference on November 17, 2014, pursuant to Federal Rule of Civil Procedure ("Rule") 16 to discuss the posture of this case. Thereafter, Judge Haggerty issued his findings on the matter in a short order, stating:

> [B]ecause defendant Northwest Empire Community Management, Inc. is merely a nominal party in the present garnishment action, it can be disregarded in determining the question whether diversity of citizenship requisite for jurisdiction exists. As such, complete diversity exists among the parties and this court has original jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a). In regards to the procedural posture of the case, the court finds that, in the previous state proceeding, garnishors requested an examination of garnishee pursuant to Oregon Revised Statute (ORS) 18.778. Based on a plain reading of ORS 18.778, an examination and a hearing to determine liability pursuant to ORS 18.782 are distinct procedures. The regulatory scheme requires the garnishor to serve written allegations upon the garnishee only after the court orders a garnishee to appear for a hearing under ORS 18.782. Therefore, garnishee is not, at this time, obligated to respond to [garnishor's] allegations . . .

November 11, 2014, Order (#10) (internal citations omitted).

On June 19, 2015, Plaintiffs filed their Motion for Summary Judgment (#19) and Sentinel filed its Cross-motion for Summary Judgment (#23). The parties also filed the Stipulated Facts

Page 9 - FINDINGS AND RECOMMENDATION

as well as 19 exhibits containing various documents relevant to this dispute (#22). The parties

submitted their responses on July 10, 2015 (#26, 27), and their reply briefs on July 24, 2015

(#28, 29). The court heard oral argument on the parties' motions on August 14, 2015. This

matter is now ready for decision.

## LEGAL STANDARDS

### I.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed"

must support that position by citation to specific evidence of record, "including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials"; by showing that the evidence of record does not establish either the presence or

absence of such a dispute; or by showing that an opposing party is unable to produce sufficient

admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c).

The substantive law governing a claim or defense determines whether a fact is material. *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g.,*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a

motion for summary judgment, the district courts of the United States must draw all reasonable

inferences in favor of the nonmoving party, and may neither make credibility determinations nor

Page 10 - FINDINGS AND RECOMMENDATION

perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See Fair Hous. Council*, 249 F.3d at 1136.

## II.    Interpreting and Construing the Policy

Under Oregon law, the interpretation of an insurance policy is a question of law. *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 24–28, 22 P.3d 739, 741–73 (2001) (citation omitted). The reviewing court must determine the intent of the parties by looking to the terms and conditions of the policy as a whole. *Id.* In making that determination, "[courts] first determine whether the policy defined the term at issue and, if it did not, [courts] look to the plain meaning of the term." *American Hardware Ins. Group v. West One Automotive Group, Inc.*, 167 Or. App. 244, 248, 2 P.3d 413 (2000).

If a term is ambiguous, then the court must construe that term against the drafter. *Id.* Ambiguity, in this context, exists "only if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which the term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or. 464, 470 (1992) (emphasis in original).

Page 11 - FINDINGS AND RECOMMENDATION

## DISCUSSION

The primary issue in this action is whether Northwest Empire submitted a valid claim to Sentinel based on David Kobbeman's theft, thus triggering the Employee Dishonesty Coverage Endorsement. That issue hinges upon whether Kobbeman was an "employee" of Northwest Empire, as that term is defined in the Policy. Based on the Policy's definition of "employee" and relevant case law, I find that Kobbeman was not an "employee" of Northwest Empire and the Claim is therefore invalid.

## I.    Kobbeman's Employment Status and the Policy's Definition of "Employee"

The parties first disagree upon whether Kobbeman was an "employee" whose dishonesty could trigger the relevant coverage of the Policy. Plaintiffs argue that Kobbeman was in fact an employee and his theft from Northwest Empire and the HOAs triggered the Employee Dishonesty Coverage under the Policy. Sentinel argues that Kobbeman was not an employee because an "employee" under the Policy includes only those individuals that the insured has the "right to direct and control." Policy Provisions, #22-11, 106.

As indicated above, the Policy includes a definition of "employee" and the section containing that definition is incorporated by reference into the Employee Dishonesty Coverage Endorsement, thus providing the court with a working analytical definition of "employee." *See American Hardware Ins. Group*, 167 Or. App. at 248. For that reason, the *Hoffman* ambiguity analysis is unnecessary to determine the definition of "employee." *Hoffman*, 313 Or. at 470.

The parties stipulate to the fact that "Kobbeman held a seat on the Board of Directors and served in the role of corporate Secretary, Vice President, and Chief Financial Officer." Stip'd. Facts, #22, ¶ 7. Nonetheless, Plaintiffs assert that Kobbeman was an employee, as it is defined

above, because (1) Gregory Lloyd, President of Northwest Empire, characterized him as such in

pursuing Northwest Empire's Claim and stated that his salary is subject to withholdings; (2)

Sentinel, in a letter, once mentioned Kobbeman by saying ". . . the dishonest acts of the employee

David Kobbeman . . ."; (3) Sentinel was allegedly satisfied that Kobbeman was an employee on

or around March 20, 2014, because it did not then prompt Northwest Empire to provide

additional information supporting the fact that Kobbeman was an employee; and (4) Northwest

Empire maintained taxation forms for Kobbeman, including a W-2, a W-4, and Form I-9. *See*

Plaintiffs' Motion, #19, 15–6; *see also* Plaintiffs' Response, #27, 4. These points are equally

incidental and inapposite, as "employee" is defined in the Policy not based upon the contracting

parties' characterizations of the individual in question or the tax forms filed for the individual.

Instead, whether Kobbeman was an "employee" is based upon whether Northwest Empire had a

right to direct and control Kobbeman in the provision of his services or whether Kobbeman,

when stealing the HOAs' monies, was acting within the usual duties of an employee. Policy

Provisions, #22-11, 106.

　　　The crux of this issue is the nature of Kobbeman's position at Northwest Empire. I

reiterate that, under the Policy, an "employee" is "[a]ny natural person . . . whom [Northwest

Empire has] the right to direct and control while performing services . . . ." Policy Provisions,

#22-11, 106. Beyond individuals over whom Northwest Empire may direct and control, this

definition extends to "a non-compensated officer" or "a director or trustee while acting as a

member of any of [Northwest Empire's] elected or appointed committees or acting within the

scope of the usual duties of an employee." *Id.* Finally, as the Policy clearly expresses, the

definition of "employee" *does not* extend to "[a]ny manager, director, partner, member or trustee,

except while acting within the scope of the usual duties of an 'employee.'" *Id.* Kobbeman specifically falls into the last category, and therefore is *not* an employee unless he was acting within the scope of the usual duties of an "employee" at Northwest Empire.

Several items are of particular significance in determining whether Kobbeman was at any point acting within the scope of the usual duties of an employee at Northwest Empire. First, a questionnaire completed by Gregory Lloyd completed in pursuit of the Claim that describes Kobbeman's thievery answers the question "Who did employee report to?" with "Employee did not report to anyone, David [Kobbeman] worked with autonomy and the accounting department reported to him." Decl. of Janis Puracal, #24, Ex. 21 (#24-2), 3. The same questionnaire asked whether Kobbeman was on the board of directors, to which Lloyd responded "David Kobbeman was on the board of directors through 06/05/2012 and served as the Secretary." *Id.* In the same questionnaire, Lloyd stated Kobbeman was solely responsible for managing the client accounts from which he ultimately stole. *Id.* at 5. Moreover, the record includes Kobbeman's correspondence with Northwest Empire's insurance agent, prior to discovery of Kobbeman's theft and while he was still serving in his roles, regarding employee dishonesty coverage. In that exchange, Kobbeman asked whether the Northwest Empire had a surety bond to protect funds held for clients. Kobbemn told the insurance agent, with regard to additional employee dishonesty coverage: "I'm sure I filled this application [out] a few years ago." Decl. of Janis Puracal, #24, Ex. 24 (#24-4), 6.[1] This shows that Kobbeman had attempted to and was still

---

[1] Plaintiffs move to strike the correspondence between Kobbeman and Northwest Empire's insurance agent discussing Kobbeman's certainty that he had previously filled out an application for a $2,000,000 employee dishonesty policy. Plaintiff argues that this is irrelevant. Plaintiffs' Response, #27, 11. I disagree, Kobbeman's autonomy in his role at Northwest Empire, including his ability to obtain insurance in anticipation of covering his own future acts, is directly at issue. Plaintiffs' motion to strike is denied.

Page 14 - FINDINGS AND RECOMMENDATION

attempting to insure his own conduct in his autonomous capacity as a Northwest Empire director and officer.

Plaintiffs argue that Kobbeman was subject to Northwest Empire's control, and was therefore an "employee," because he was bound to the terms of various agreements with the company's HOA clients. *See, e.g.*, Plaintiffs' Response, #27, 5. I find that argument unpersuasive. The critical question here is whether Northwest Empire had a right to "direct and control" Kobbeman or whether he was acting within "the scope of the usual duties of an 'employee,'" not whether Kobbeman's practices as Vice-President, Corporate Secretary, and CFO were required to conform to client agreements. Policy Provisions, #22-11, 106.

Further, I look to the Ninth Circuit's holding in *California Union Ins. Co. v. American Diversified Saving Bank*, 948 F.2d 556 (9th Cir. 1991), to answer the question whether autonomous corporate officers can be considered employees in the context of similar insurance claims with similar definitions of "employee." In that case, the Ninth Circuit considered whether a district court had erred in concluding that Federal Savings and Loan Insurance Corporation ("FSLIC"), acting as conservator for American Diversified Savings Bank ("ADSB"), could recover, under fidelity bonds issued to ADSB, losses incurred by ADSB due to wrongdoings of two of its principal officers and directors who were also the bank's sole shareholders. *Id.* The fidelity bonds in question provided coverage for losses caused by the dishonest or fraudulent conduct of FSLIC's employees. *Id.* The Ninth Circuit held that the bank's two principal officers and directors were not "employees" as that term was defined in the insurance contract—which contained a definition of "employee" mirroring that of the Policy in this case—in part due to the "public policy against permitting a corporation to collect insurance for the defalcations of its alter

Page 15 - FINDINGS AND RECOMMENDATION

ego," and also because the individuals in question were principal officers and directors of the bank, even though they were not the bank's only officers. *California Union*, 948 F.2d 556 at 566. Under the Ninth Circuit's analysis, and in light of Kobbeman's autonomy, status as board member and director, and 40% shared control of Northwest Empire's parent company with Lloyd, I similarly find that Kobbeman is not an "employee" under the Policy.

Plaintiffs attempt to distinguish *California Union* by arguing that the court "relied on the fact that the principals owned 100 percent of the stock of the insured's parent company." Plaintiffs' Response, #27, 10. While the court *mentions* the fact that the officers in question owned complete stock in the company, it simply cited *control* of the insured company as the deciding factor in determining whether the officers met the policy definition of "employee," without discussing any particular type of control. 948 F.2d 556 at 566. Nonetheless, had the court relied solely on stock holdings and financial control rather than board positions or practical control, Kobbeman's forty percent share of King Magsulit Holdings, Northwest Empire's parent company, which was second only to Lloyd's sixty percent share, would lead to the same conclusion provided above under the *California Union* analysis.

Finally, I disagree with Plaintiffs' proposed interpretation of "direct and control" as it applies to the definition of "employee," above. Plaintiffs ask this court to construe that aspect of the Policy's general definition of "employee" in a light favorable to Plaintiffs but they effectively ignore, however, that Kobbeman was a compensated director of Northwest Empire, as reflected by Lloyd's admission, Decl. of Janis Puracal, #24, Ex. 21 (#24-2), 3, and therefore would be considered an "employee" only if he was "acting within the scope of the usual duties of an 'employee'" based on the Policy's express description of what "'[e]mployee' does not mean."

Page 16 - FINDINGS AND RECOMMENDATION

Policy Provisions, #22-11, 106.  As revealed in the analysis above, Kobbeman's autonomous

activities appear to be carried out in his capacity as partial owner of Northwest Empire's parent

company, as director, and as corporate officer of Northwest Empire, rather than in the usual

capacity of an employee per the Policy's definition of that term.

Further, I find Plaintiffs' attempted reliance on workers compensation cases to provide an

interpretation of "direction and control" to be unpersuasive.  While I agree that a court can

soundly determine "direction and control" by looking to various factors of employment, I find

those factors and the arguments asserted by plaintiffs inapposite in light of the fact that

Kobbeman was not acting within the usual duties of an "employee" both due to his positions and

because, as admitted by Northwest Empire's president, Kobbeman "did not report to anyone, [he]

worked with autonomy[,] and the accounting department reported to him."  Decl. of Janis

Puracal, #24, Ex. 21 (#24-2), 3.

For all of these reasons, I find that Kobbeman was not an "employee" under the Policy for

the purposes of this action.  I do not need to address the other issues raised by Sentinel in support

of its Cross-Motion for Summary Judgment.  Because the Employee Dishonesty Coverage was

triggered only by dishonest acts of an employee, Sentinel's Cross-motion for Summary Judgment

(#23) should be granted and Plaintiff's Motion for Summary Judgment (#19) should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 17 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (#19) should be denied and Sentinel's Cross-Motion for Summary Judgment (#23) should be granted. Plaintiffs' claims against Sentinel should be dismissed in their entirety.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 21st day of August, 2015.

Honorable Paul Papak
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION