IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CEDAR LAKE HOMEOWNERS ASSOCIATION, an Oregon domestic nonprofit corporation, DECATUR BRIDGEWATER VISTA CONDOMINIUMS OWNERS' ASSOCIATION, an Oregon domestic nonprofit corporation**, | Case No. 3:14-cv-00599-PK **OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **NORTHWEST EMPIRE COMMUNITY MANAGEMENT, an Oregon corporation formerly known as Professional Community Management, Inc.,** | |
| Defendant, | |
| v. | |
| **SENTINEL INSURANCE COMPANY, LTD., a Connecticut corporation**, | |
| Garnishee. | |

James S. Crane and Stuart K. Cohen, LANDYE BENNETT BLUMSTEIN LLP, 1300 S.W. Fifth Avenue, Suite 3500, Portland, OR 97201. Attorneys for Plaintiffs.

William Tyler Griffith, 3800 N.E. Sandy Boulevard, Suite 113, Portland, OR 97232. Attorney for Defendant.

Francis J. Maloney, III and Janis C. Puracal, MALONEY, LAUERSDORF, & REINER, PC, 1111 E. Burnside Street, Suite 300, Portland, OR 97214. Attorneys for Garnishee.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiffs and Sentinel Insurance Company, Ltd.'s ("Garnishee") each filed motions for summary judgment in this case. United States Magistrate Judge Paul Papak issued Findings and Recommendation on August 21, 2015. Dkt. 31. Judge Papak found that David Kobbeman ("Kobbeman"), who is alleged to have misappropriated monies from Plaintiffs, was not a covered "employee" for purposes of the insurance policy ("Policy") written by Sentinel Insurance Company, Ltd. ("Garnishee"). Judge Papak considered this finding to be dispositive and thus did not address the other arguments raised by the parties in their respective summary judgment motions. Judge Papak recommends that the Court deny Plaintiffs' motion for summary judgment and grant Garnishee's cross-motion for summary judgment. For the following reasons, this Court resolves the issues differently.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* a magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does

not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Plaintiffs timely filed objections to Judge Papak's Findings and Recommendation. Dkt. 33. Plaintiffs object to Judge Papak's finding that Kobbeman was not a covered employee for purposes of Garnishee's Policy. Plaintiffs assert that the Findings and Recommendation fails to consider material facts and improperly views facts in the light most favorable to Garnishee.

Garnishee responded to Plaintiffs' objections. Dkt. 34. Garnishee argues that Plaintiffs failed to raise "specific" objections as required by Federal Rule of Civil Procedure 72(b)(2) and merely repeated arguments that Judge Papak had already considered and rejected. Garnishee invites the Court to review the Findings and Recommendation for clear error. The Court finds that Plaintiffs have stated their objections with adequate specificity and reviews the Findings and Recommendation *de novo*, as well as Plaintiffs' objections, Garnishee's response, and the underlying briefing.

On June 19, 2015, Plaintiffs filed a motion for summary judgment on their garnishment claim. Dkt. 19. Plaintiffs argued that Garnishee's Employee Dishonesty coverage applies because: (1) Kobbeman was an employee under the Policy; (2) Kobbeman committed dishonest acts; (3) Kobbeman stole covered property; and (4) Kobbeman appropriated monies with the intent to cause a loss to Defendant and to obtain financial benefit for himself, as required in order to trigger Employee Dishonesty coverage. Plaintiffs also argued that they were entitled to coverage for computer fraud under the Policy.

PAGE 3 – OPINION AND ORDER

Garnishee filed a motion for summary judgment on the same day. Dkt. 23. Garnishee argued that Plaintiffs' garnishment claim is invalid because: (1) Kobbeman was not an employee under the Policy; (2) Defendant suffered indirect losses that the Policy does not cover; and (3) Kobbeman's acts benefited the insured or were committed without intent to harm the insured.

The Findings and Recommendation concludes that Kobbeman was not Defendant's "employee" as that term is defined in the Policy and that as a result, the Policy's Employee Dishonesty coverage was not triggered and Plaintiffs cannot collect on their garnishment claim. The Findings and Recommendation therefore does not reach the other issues and arguments the parties raised.

For the reasons discussed below, the Court disagrees with the Findings and Recommendation's conclusion that Kobbeman was not Defendant's "employee" as that term is defined in the Policy and finds to the contrary, that Kobbeman was Defendant's "employee" for purposes of the Policy. The Court therefore adopts in part and rejects in part the Findings and Recommendation. The matter is returned to Judge Papak for consideration of the parties' other summary judgment arguments, as applicable.

## DISCUSSION

### A. Standards

#### 1. Summary Judgment Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257

(9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

### 2. Oregon Insurance Contract Interpretation

The interpretation of an insurance policy is a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). The court must determine the intent of the

PAGE 5 – OPINION AND ORDER

parties by looking to the policy's terms and conditions. Or. Rev. Stat. § 742.016; *N. Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 24 (2001). The court first examines the text of the policy to determine whether it is ambiguous. *First Mercury Ins. Co. v. Waterside Condominium Ass'n*, 2013 WL 6383883, *5 (D. Or. Dec. 5, 2013) (quoting *Andres v. Am. Standard Ins. Co. of Wis.*, 205 Or. App. 419, 423 (2006). If the text of the policy includes a definition of a disputed term, the Court must construe the policy in accordance with that definition. *Id.* (quoting *Andres*, 205 Or. App. at 423).

If the policy does not define the disputed term, the court looks to "'ordinary meaning' and other aids of construction." *Id.* (quoting *Andres*, 205 Or. App. at 424). "The first aid to interpretation is determining whether the term at issue has a *plain* meaning. The meaning of a term is 'plain'—that is, unambiguous—if the term is susceptible to only one plausible interpretation." *Id.* (quoting *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 308 (1999)) (emphasis in original). If "two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continue[] to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which the term is used in the policy and the broader context of the policy as a whole[,]" then the term is ambiguous. *Hoffman*, 313 Or. at 470. The court resolves the ambiguity by construing the term against the drafter of the policy. *Id.* at 470-71. "In the majority of cases applying the maxim of construing ambiguous policy language against the drafter, the language at issue was non-negotiated, standard, and provided by the insurer." *First Mercury*, 2013 WL 6383883 at *7.

## B. Background

The Court adopts the Factual Background and Procedural Background sections of the Findings and Recommendation.

**C.  Analysis**

The Court first looks to the language of the Policy. The Policy defines an employee as

follows:

> "Employee" means:
>
>> 1. Any natural person:
>>
>>> a. While in your service (and for 60 days after termination of service); and
>>>
>>> b. Whom you compensate directly by salary, wages or commissions; and
>>>
>>> c. Whom you have the right to direct and control while performing services for you. . . .
>>
>> 6. Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee;" . . . .
>
> "Employee" does not mean: . . .
>
>> (2) Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee."

Dkt. 22-11 at 106. Because the Policy provides a definition of "employee," the Court must

construe the policy in accordance with this definition. Kobbeman was Defendant's "employee"

only if Defendant had a right to direct and control him. The Policy does not define "the right to

direct and control." The Court finds, however, that this term has a plain meaning and can be

construed accordingly.[1] The parties' dispute concerns the application of the term to this

particular set of facts.

---

[1] Even if the term "right to direct and control" was ambiguous, it would then, under *Hoffman*, be construed against the drafter and the result would be the same—that Kobbeman was Defendant's employee under the Policy.

PAGE 7 – OPINION AND ORDER

Garnishee argues that a number of undisputed facts indicate that Defendant did not have a right to direct and control Kobbeman, including:

1. A questionnaire completed by Lloyd in which Lloyd stated that Kobbeman "did not report to anyone, [Kobbeman] worked with autonomy and the accounting department reported to him." Dkt. 24-2 at 4.

2. Lloyd's statements in the same questionnaire that Kobbeman "was responsible for paying company bills and oversight of company funds, payroll and other HR related tasks," and that the company "bank accounts were not accessed directly by accounting or other account signers as the management of funds was [Kobbeman's] responsibility." Dkt. 24-2 at 4-5.

3. Kobbeman's 40% share in Defendant's parent company, Dkt. 24-3 at 2, and his positions as Board Member, Secretary, Vice President, and Chief Financial Officer, Dkt. 22 ¶ 7.

4. A statement by Plaintiffs' counsel that Kobbeman "had absolute control over the bank accounts." Dkt. 24-4 at 1.

5. Kobbeman's correspondence with Defendant's insurance agent regarding Employee Dishonesty coverage.[2]

Garnishee relies on *California Union Insurance Co. v. American Diversified Savings Bank*, 948 F.2d 556 (9th Cir. 1991) to support Garnishee's argument that Kobbeman is not an employee. In *California Union*, the Ninth Circuit considered whether the U.S. District Court for the Central District of California erred in concluding that two principal bank officers and directors, Ranbir Sahni and Lester Day, were not employees within the meaning of an insurance company's employee dishonesty policy. 948 F.2d at 557-58. The policy at issue in *California Union* defined an employee as any natural person whom the insured compensates by salary and "has the right to govern and direct" in the performance of services for the insured. *Id.* at 566. It was undisputed that Sahni and Day jointly controlled both the bank and the insured corporation,

---

[2] Plaintiffs moved to strike Kobbeman's efforts to obtain Employee Dishonesty coverage as irrelevant. Dkt. 27 at 11. The Findings and Recommendation denied Plaintiffs' motion to strike. Dkt. 31 at 14, n.1. The Court agrees.

a wholly owned subsidiary of the bank. *Id.* Though they were not the sole officers of the

corporation, they were its principal officers and directors. *Id.* Additionally, Sahni and Day

together owned 100% of the bank's stock—Sahni owned 96%, and Day owned 4%. *Id.* at 558.

The Ninth Circuit did not consider whether Day was under Sahni's direction and control. The

Ninth Circuit concluded: "Because Sahni and Day controlled the Insured, rather than the

Insured's controlling them, they do not meet the policy definition of 'employees.' Moreover,

there is a public policy against permitting a corporation to collect for the defalcations of its alter

ego." *Id.* at 566 (citing cases).

      The Court finds that *California Union* is distinguishable from this case. Here, only

Kobbeman's defalcations are at issue. There is no evidence or claim that Lloyd misappropriated

funds. On June 4, 2012, Lloyd terminated Kobbeman due to misconduct and inappropriate

handling of client and company funds. Dkt. 21-3. Lloyd discovered Kobbemans's misconduct

after investigating a bounced check. Dkt. 20-3 at 2. Lloyd learned that Kobbeman would print

account statements and modify them before sending them to the accounting department, Lloyd,

internal staff, and clients. Dkt. 20-3 at 3. Lloyd confronted Kobbeman and Kobbeman admitted

to the mismanagement of company and client funds. Dkt. 20-3 at 4. Lloyd then banned

Kobbeman from company property and from contacting any of Defendant's employees or

clients. Dkt. 21-3. *California Union* does not support the argument that a minority shareholder,

standing alone, is not an "employee" as defined under the Policy. Because Kobbeman was only a

minority shareholder and was fired by the majority shareholder after Kobbeman's misdeeds were

discovered, the Court finds *California Union* distinguishable.

      Plaintiffs argue that Oregon workers' compensation law provides guidance as to whether

Defendant had the right to direct and control Kobbeman. Oregon Revised Statutes § 656.005(30)

defines a worker as "any person . . . subject to the direction and control of an employer. . . ."
"The test for determining 'control' in the workers' compensation context 'is based not on the
actual exercise of control by the employer, but on the right to control.'" *S-W Floor Cover Shot v.
Nat'l Council on Compensation Ins.*, 318 Or. 614, 622 (1994). Factors to be considered in
determining whether a "right to control" exists include: (1) whether the employer retains the
right to control the details of the method of performance; (2) the extent of the employer's control
over work schedules; (3) whether the employer has power to discharge the person without
liability for breach of contract; and (4) payment of wages. *Id.* (citing cases).

Oregon courts use a similar "right to control test" in deciding whether a worker is an
employee or independent contractor for wage claim purposes. The test requires that a court
weigh four factors: (1) direct evidence of the right to, or exercise of, control; (2) the furnishing of
tools and equipment; (3) the method of payment; and (4) the right to fire. *Slayman v. FedEx
Ground Package Sys., Inc.*, 765 F.3d 1033, 1042 (9th Cir. 2014). "Direct evidence of the right to
control is the most important factor under Oregon law." *Id.* In addition, "[t]he test for
determining whether one is a servant or an independent contractor is not the actual exercise of
control—the actual interference by the employer with the manner and method of accomplishing
the result—but the right to interfere." *Nordling v. Johnston*, 205 Or. 315, 332 (1955).

Kobbeman chose to conceal his fraudulent behavior by falsifying account statements
before reporting them to Lloyd. After Lloyd discovered a bounced check, he investigated its
cause, confronted Kobbeman, and terminated Kobbeman for account mismanagement. Thus,
although Kobbeman's day-to-day work may have been autonomous, Lloyd retained the right to
control the manner and method of Kobbeman's performance, as well as the right to fire
Kobbeman, which Lloyd then exercised. Additionally, Defendant paid Kobbeman a salary.

Dkt. 21 ¶ 3. The Court could not locate evidence in the record regarding Kobbeman's work schedule or whether Defendant furnished Kobbeman with tools and equipment. Thus, the Court does not consider those factors. Under all relevant factors, Kobbeman was an employee under the Policy.

The Court rejects the Findings and Recommendation's conclusion that Garnishee is entitled to judgment as a matter of law. The Court concludes that under Oregon's tests for determining an employer's right to control, Kobbeman was Defendant's employee as that term is defined in the Policy.

## CONCLUSION

The Court ADOPTS IN PART AND REJECTS IN PART the Findings and Recommendation. Dkt. 31. The Court adopts the Factual Background and Procedural Background sections and declines to adopt the remainder of the Findings and Recommendation. The Court finds that Kobbeman was an employee of Defendant under the applicable Policy. Because the parties' cross-motions for summary judgment raised additional arguments not considered in the Findings and Recommendation, this case is returned to Judge Papak for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 13th day of October, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge